ROBERT C. FRYER and MARTHA J. FRYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
FRYER v. COMMISSIONER
Docket No. 4632-72.
United States Tax Court
T.C. Memo 1974-77; 1974 Tax Ct. Memo LEXIS 240; 33 T.C.M. (CCH) 403; T.C.M. (RIA) 74077; March 28, 1974, Filed. Robert C. Fryer, pro se. Richard H. Gannon, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency of $3,105.94 in petitioners' Federal income taxes for the calendar year 1969. Both parties have made certain concessions and the following issues remain for our decision: (1) Whether petitioners may deduct expenses incurred by Robert C. Fryer in driving to and from his home and the American Airlines' terminal in Buffalo, New York; (2) whether petitioners are entitled to any deductions for alleged traveling expenses incurred by Robert C. Fryer while on layovers between flights for American Airlines; (3) whether petitioners may deduct traveling expenses incurred in looking for a new home in California; (4) whether respondent erred in denying to petitioners any *243 deduction for traveling expenses incurred on a trip to Europe; (5) whether respondent erred in disallowing deductions for alleged casualty losses to petitioners' property; (6) whether petitioners are entitled to a bad debt loss deduction under section 166, I.R.C. 1954, [1] because of the failure of a contractor to reimburse them, as allegedly promised, for the cost of completing certain work on petitioners' property. FINDINGS OF FACT Some of the fact have been stipulated and are so found. Petitioners Robert C. Fryer and Martha J. Fryer are husband and wife who, at the time they filed the petition herein, resided in Coronado, California. They filed their joint Federal income tax return for the calendar year 1969 with the district director of Internal Revenue, Buffalo, New York. Issues 1-3. Employment-Related Expenses During 1969, Robert C. Fryer (petitioner) was employed as a commercial pilot by American Airlines, flying out of the American Airlines' terminal in Buffalo, New York (Buffalo). Petitioner and his wife, Martha, lived *244 in Cuba, New York. During 1969, petitioner made at least 48 round trips by automobile from Cuba, New York, to Buffalo, a round-trip distance of approximately 150 miles. As a condition of his employment, petitioner was required to carry certain materials on all flights, including charts, flight manuals, FAA regulations, a log book and a flashlight. There was no storage space for such materials at the airport in Buffalo, nor any other place at the airport where he could conveniently make necessary revisions of the flight manuals and charts, consequently, petitioner took these materials home with him between flights. He carried the materials in a "kit bag" the size of an ordinary attache case. The bag, when filled with such materials, weighed approximately 30 to 40 pounds. Petitioner made the necessary revisions of the manuals and charts in an office he maintained in his home. There is no evidence as to how much time he spent in his office on such revisions. During 1969 petitioner was also the president of Williams Food Products, Inc. (William), a business located in Olean, New York, which was approximately 16 miles from petitioner's residence. Petitioner also managed some real *245 estate in the Caribbean and certain stocks and bonds. In late 1969 petitioner began operating a coat-checking business but received gross income from the latter of only $3.25 for that year. It is not established how much time he actually spent on any of these other activities in the office he maintained in his home. On his 1969 return petitioner claimed a $720 deduction for automobile expenses incurred in travling to and from his home in Cuba, New York, to the airport in Buffalo. Respondent disallowed such deduction in full. As required by American Airlines, petitioner flew on numerous occasions from Buffalo to various cities in the United States. Prior to returning to Buffalo he was required to layover in those cities for at least eight hours. While present in these other cities he incurred expenses for food, transportation, and other miscellaneous items, but except for a car rental expense item of $189.96 in connection with a training session in Fort Worth, Texas, there is no evidence in the record as to the amounts petitioner actually spent for any of the above-mentioned items. Pursuant to a contract between American Airlines and the Allied Pilots Association, petitioner *246 received $1,049.22 from American Airlines as reimbursement for a portion of these expenses. Petitioner was away from home for at least 128 days on American Airlines' business during 1969. On his 1969 return petitioner claimed a deduction of $2,150.78 for unreimbursed expenditures incurred while away from home on American Airlines' business. He arrived at this figure by estimating that he incurred an average of $25 a day in deductible expenses on those 128 days he was away from home. Respondent has disallowed such claimed deduction in full. Petitioner was not entirely satisfied with operating out of the American Airlines' terminal in Buffalo. He thought that if he could transfer to California he would be able to fly larger planes and earn a higher salary. In September of 1969 petitioner and Martha flew to California to look for a suitable home in case he was transferred to California at some time in the future. While the primary purpose of the trip to California was to look at homes, petitioner also had discussions with American Airlines' representatives in which he sought information about a possible transfer to California. Because such transfers were made only on the *247 basis of seniority, petitioner was not transferred to California until sometime in 1972. Petitioner and Martha expended $422.05 for transportation, food and lodging on their trip to California, and deducted this amount on their 1969 return.Respondent has disallowed this deduction in full. Issue 4. Business Travel Expenses In November of 1969, petitioner and Martha traveled to Portugal, Italy and Greece. Prior to his arrival in Portugal, petitioner had ordered a quantity of wigs from a Belgian manufacturer whose factory was in Portugal. Petitioner examined the wigs in Portugal, determined that their quality was unsatisfactory, and refused to go through with the deal. Petitioner had sought these wigs because he was thinking of offering a line of ladies' wigs in Canada. After leaving Portugal the petitioners traveled to Italy, where no business was conducted. From Italy they went to Athens, Greece, where they agreed with Dimitrious Venoutsos (Venoutsos) to open and operate three retail fur stores on the island of Rhodes. After leaving Athens they traveled to Rhodes to check on possible locations for the stores, as well as to check on Venoutsos' business reputation. Investigation *248 revealed that Venoutsos was not a trustworthy person, and as a result no further action was taken by petitioner to establish fur stores on Rhodes. There is nothing in the record as to the actual duration of the trip to Europe, nor as to the length of time spent in any of the places visited. Petitioner and Martha expended the sum of $2,718 for travel expenses on this trip, and deducted one-half this amount on their 1969 return. Respondent disallowed such deduction in full. Issue 5. Casualty Loss Deductions On or about June 27, 1969, a large shade tree, located next to petitioner's home in Cuba, New York, was broken in half by a tornado. The upper half of the tree fell against petitioner's house and damaged the roof. Insurance compensated him for all damages to the house, but on his 1969 return he claimed that the loss of the tree reduced the fair market value of the house by $500, thus entitling him, he contended, to a casualty loss deduction of $400 under section 165(c) (3). The property on which the house and tree was located was leased from the State of New York; the house was owned by the petitioners. Respondent disallowed such deduction in full. On or about December 13, 1969, wind *249 pushed ice on Cuba Lake into a dock owned by the petitioners, thereby causing damage to some of the pilings supporting the dock. [2] The dock was L-shaped, one leg being approximately 30-feet long, the other approximately 20-feet long, with each leg approximately 7-feet in width. The damaged pilings were replaced in 1970. On their 1969 return petitioners claimed a casualty loss with respect to the damaged dock in the amount of $900, a deduction which respondent again disallowed in full. [3]
Issue 6. Bad Debt Loss Deduction In August 1968, petitioner signed two contracts with P and P Sales (P & P) for the performance of concrete and paving work around the family home in Cuba, New York. Pursuant to the contracts, petitioner made total downpayments of $715, leaving a balance of $723.25 to be paid by him when the work was completed. When petitioner and Martha returned *250 from a trip to Florida in the fall of 1968, they discovered that the work was only partially completed and that some damage had been done to their property. In 1969, after it had become apparent that P & P would be unable to perform its part of the contract, a representative of P & P verbally promised petitioner that the company would reimburse him for his excess costs in having to obtain another contractor to complete the work. In fact, petitioner expended an additional $1,874.65 to complete the work which was to have been performed, originally, by P & P, and claims a deduction of $1,151.40 (the amount of the excess costs incurred which P & P had promised to cover) as a bad debt loss sustained in 1969. Respondent disallowed such deduction in full. OPINION Issues 1-3. Employment-Related Expenses The first issue for our decision is whether petitioner may deduct the automobile expenses he incurred in driving to and from his home in Cuba, New York, and the airport in Buffalo. Petitioner sets forth two theories upon which he bases his claim for a deduction. By his first theory petitioner asserts that because he has an office in his home and does work there, his home has become *251 his place of business. Thus, petitioner continues, the above-described expenses were incurred while traveling between places of business, and are hence the type of "away from home" expenses which are deductible under section 162(a) (2). Respondent counters by urging that despite the office in his home, petitioner's auto expenses are still nondeductible costs of commuting to work. We must agree with respondent. It has long been held that the expenses one incurs in commuting between one's home and place of business are personal and nondeductible. Commissioner v. Flowers, 326 U.S. 465, 473-4 (1946); Frank H. Sullivan, 1 B.T.A. 93, 94-5 (1924); William L. Heuer, Jr., 32 T.C. 947, 951-2 (1959), affd. 283 F.2d 865 (C.A. 5, 1960). Expenses incurred on trips between places of business, however, are deductible. Steinhort v. Commissioner, 335 F.2d 496-504 (C.A. 5, 1964); William L. Heuer, Jr., 32 T.C. at 951-3. In the instant case it is petitioner's contention that, because of the activities he carried on in his *252 home office, his home was his place of business. We have held, however, that before the presence of an office in one's home will allow traveling expenses from one's home to another place of business to be considered business expenses incurred while "away from home," and thus deductible under section 162(a) (2), that such office must be a principal office, in which the petitioner in fact does carry out a substantial portion of his business activities. Thomas J. Green, Jr., 59 T.C. 456, 459 (1972); Smith v. Warren, 388 F.2d 671, 673 (C.A. 9, 1968). Only where the use of one's home is so central to the actual conduct of his business that trips between his home and other places of business come to proximate normal and deductible business travel, will we permit the deduction of what are ordinarily considered "commuting-type" expenses. The question is one of characterization, of determining whether such trips have primarily the flavor of ordinary commuting, or whether the resemblance is more to that of travel between different business locations. Julio S. Mazzotta, 57 T.C. 427, 429-30 (1971), affirmed per curiam 465 F.2d 1399 (C. *253 A. 2, 1972). In that instant case it is clear to us that the predominant character of the Cuba, New York-Buffalo, trips was that of ordinary commuting between one's home and place of business. It is true that because of the lack of office space at the airport petitioner had to perform some work in connection with his pilot's duties elsewhere. While the importance of revising flight manuals and changing charts is not to be doubted, such clearly constitute only a minor part of his work as an airline pilot. It is also true that petitioner probably worked on his stocks and bonds and whatever real estate he owned, in his home office, and may have looked at matters in connection with the Williams Food Corporation. However, there is nothing in the record as to just how much time petitioner spent in these efforts. As far as we can determine, petitioner was not in a materially different situation from any other individual who makes outside investments in addition to his primary work. The mere fact that he performed some such activity in his home is clearly insufficient to convert into deductible business travel the trips from his home to his principal business headquarters. Petitioner *254 also argued that, because he had to carry along with him the kit bag, containing the various materials he had to work on in connection with his pilot duties, that the above-described expenses should be characterized not as simple commuting expenses but rather as deductible expenses incurred in transporting business equipment. Under the standard set forth by the Supreme Court of the United States in Fausner v. Commissioner, 413 U.S. 838 (1973), one may deduct only "Additional expenses * * * incurred for transporting job-required tools and material to and from work." (Emphasis supplied.) 413 U.S. at 839. In the instant case, petitioner made no showing that he incurred any additional expenses by having to transport the above-described materials by car. He has not shown, for example, whether any reasonable and reliable public transportation was available for the 150 mile round trip, or that (even were such transportation available) he would not have driven to work by choice.
Petitioner next claims a deduction for alleged unreimbursed expenses incurred while on layovers between flights for American Airlines. It is stipulated that such expenses were incurred *255 while "away from home," thus complying with the language of section 162(a) (2). However, before petitioner may deduct any such expenses, he must also comply with the substantiation requirements of section 274(d): (d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expenses or other item, (B) the time and place of the travel * * *, (C) the business purpose of the expense or other item * * * In the instant case, petitioner provided us neither with any records of such alleged unreimbursed expenditures, [4] nor any evidence - e.g., the textimony of another witness - to corroborate his own oral statements as to the above-mentioned elements of his expenses. See Hughes v. Commissioner, 451 F.2d 975, 979 (C.A. 2d, 1971); Henry Schwartz Corp., 60 T.C. 728, 741 (1973); sections 1.274-5(c) (3), 1.274-5(e), Income *256 Tax Regs. While we think it likely that petitioner did incur certain unreimbursed costs while on layovers, fulfillment of the substantiation requirements on the facts of the instant case is now the sine qua non for deductibility. An allowance of a deduction under the Cohan principle ( Commissioner v. Cohan, 39 F.2d 540, 543-4 (C.A. 2, 1930), affirming in part and remanding 11 B.T.A. 743 (1928)), is no longer available to the taxpayer. See William F. Sanford, 50 T.C. 823, 828 (1968), affd. 412 F.2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969); S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 877; H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 427. Thus, petitioner is entitled to no deduction for any unreimbursed expenses he may have incurred while away from home on American Airlines' business in 1969. The next issue for our decision is whether or not petitioner may deduct expenses *257 of $422.05 which he and his wife incurred on their trip to California in September of 1969. At trial, petitioner conceded that he went to California at that time for the primary purpose of locating a suitable home should he be transferred there in the future by American Airlines.
Expenses incurred in house-hunting, to the extent that Congress has not specifically provided otherwise in the Code, have been consistently characterized as nondeductible personal expenses under section 262. Lull v. Commissioner, 434 F.2d 615, 617 (C.A. 9, 1970), affirming 51 T.C. 841 (1969); England v. United States, 345 F.2d 414, 417 (C.A. 7, 1965); cf. Lloyd G. Jones, 54 T.C. 734, 741 (1970), affd. 444 F.2d 508 (C.A. 5, 1971). As amended by the Tax Reform Act of 1969, effective for years beginning after December 31, 1969, section 217 does contain a provision allowing a deduction for house-hunting expenses in certain cases. However, petitioner would not qualify for the relief provided under that new provision, even if the year were 1970, *258 for it is specifically limited to "expenses paid * * * during the taxable year in connection with the commencement of work by the taxpayer." In the instant case, petitioner did not obtain employment in California until three years after the trip. Where the principal purpose and conduct of one's travel is personal, the fact that some incidental or minor business purpose may have been served does not save a deduction for the taxpayer. Robert Lee Henry, 36 T.C. 879, 883-6 (1961); Chas. D. Long, 32 T.C. 511, 513-4 (1959), affd. 277 F.2d 239 (C.A. 8, 1960); see also United States v. Generes, 405 U.S. 93, 103-5 (1972). As noted above petitioner conceded at trial that his real and primary purpose in going to California was to seek a new home. While petitioner apparently did engage in some discussions with American Airlines' representatives, it is clear that such constituted only a very minor part of the trip. Petitioner provided no testimony or other evidence as to the duration of such discussions, or their subject matter, beyond that he *259 was "seeking information about a possible transfer." Furthermore, petitioner undoubtedly realized in 1969 that his seniority position was such that an immediate transfer was not possible. Thus, to what extent his discussions with officials constituted actual "job seeking" is not at all clear. In any event, petitioner's trip being primarily of a personal nature, we uphold respondent's action in disallowing any deduction to petitioner for expenses incurred on such trip. Issue 4.Business Travel Expenses We come next to petitioner's claim for a deduction for one-half of the expenses he and Martha incurred on their trip to Europe in November 1969. It is petitioner's contention that one-half of the expenses of such trip are allocable to his attempts to purchase wigs in Portugal and establish a fur business on the island of Rhodes. Expenses for these activities, he argues, may be deducted under any one of sections 162(a) (2), 212(1), 165(c) (1), and 165(c) (2). [5]
*260 Petitioner was not in the trade or business of selling wigs or furs when he went to Europe. Indeed, he had not shown that he is now or ever has been in such businesses. Thus, none of the expenses mentioned above were incurred in connection with a trade or business and, hence, sections 162(a) (2) and 165(c) (1) do not provide for their deduction. Frank B. Polachek, 22 T.C. 858, 863 (1954); Stanton v. Commissioner, 399 F.2d 326, 329 (C.A. 5, 1968), affirming a Memorandum Opinion of this Court; Harold Haft, 40 T.C. 2, 7 (1963). As to his claim under section 212(1), expenses incurred in pursuing new interests which might in the future produce income are not deductible under such section: There is basic distinction between allowing deductions for the expense of producing or collecting income, in which one has an existent interest or right, and expenses incurred in an attempt to obtain income by the creation of some new interest. * * * [Morton Frank, 20 T.C. 511, 514 (1953); Marion A. Burt Beck, 15 T.C. 642, 670 (1950), *261 affirmed per curiam 194 F.2d 537 (C.A. 2, 1952), certiorari denied 344 U.S. 821 (1952); Eugene H. Walet, Jr., 31 T.C. 461, 472, fn. 2 (1958), affd. 272 F.2d 694 (C.A. 5, 1959).] In the instant case petitioner clearly had no "existent interest or right" in the potential future income of either the wig or the fur business, hence, no deduction is allowable to him under section 212(1). Finally, petitioner contends that these expenses are deductible as losses under section 165(c) (2). Before one is entitled to deduct a loss under section 165(c) (2), he must demonstrate that he has in fact entered into a "transaction," the purpose of which was to produce income. The mere fact that the contemplated business was not actually commenced and carried out as planned by the taxpayer, does not in and of itself require that we find that no transaction has been entered into. Where the taxpayer was himself committed to enter into the business, as by a contractual commitment, Harris W. Seed, 52 T.C. 880, 886-7 (1969), or where some *262 actual operations of the business were commenced and carried out, Charles T. Parker, 1 T.C. 709-711 (1943), we have, in the past, found that a transaction had been entered into for the purposes of section 165(c) (2) and have allowed loss deductions. In the absence of such commitment or operations, however, expenses incurred in mere preliminary investigation and preparation for possible future entry into a business or income producing activity have not been allowed as deductions under this section. Morton Frank, 20 T.C. at 514; George A. Dean, 56 T.C. 895, 902-3 (1971). In the instant case, we find that petitioner's activities in Portugal, Greece and Rhodes constituted mere preliminary investigation or preparation, and hence, hold that he is entitled to no deductions under section 165(c) (2). In 1969, petitioner had thoughts of offering a line of wigs for sale in Canada. While in Portugal, petitioner inspected some wigs which he felt he might be interested in purchasing for such contemplated venture. Although he looked at the wigs pursuant to an order he had placed previously, there is no evidence that he was in any way committed to purchase *263 them. Indeed, it was established that he was able to refuse to purchase them solely on the basis of his own personal discretion - on his judgment that the wigs were not of a satisfactory quality. In the absence of any evidence of any type of commitment on petitioner's part - either to purchase the wigs or to commence a business in Canada or elsewhere - we cannot find that his activities in Portugal constituted anything more than a mere preliminary investigation of potential supplies for his contemplated business. As to petitioner's trips to Greece and Rhodes, it is true that there was some sort of an agreement with Venoutsos as to the opening and operation of fur stores on Rhodes. Such agreement, however, was clearly not a binding one. There is no better evidence to this lack of a commitment than petitioner's own easy withdrawal when he discovered, soon after the agreement, that Venoutsos did not have a good business reputation. Again, there is nothing in the record to indicate that petitioner could not have abandoned the so-called agreement - without any resulting liability - at any time and for any reason he wished. Such fact stands in stark contrast to those before us in *264 Seed, supra, where we found that by virtue of the agreement there entered into, the petitioner had become contractually committed to the enterprise, and could have been sued by the other parties had he ignored his obligations. Harris W. Seed, 52 T.C. at 886. Here, from the facts before us, it appears that petitioner could have walked away from the agreement at will. Hence, being guided by the substance rather than the mere form of an agreement, we think that petitioner here, as was true of his activity in Portugal, was doing no more than preliminarily investigating a contemplated business. On the facts here presented, we find petitioner entitled to no deduction for travel expenses incurred on his trip to Europe. Issue 5. Casualty Loss Deductions The next issue for our decision is whether petitioner is entitled to a casualty loss deduction under section 165(c) (3) for the alleged decrease in value to his home caused by the damage to the shade tree. The tree, which stood next to petitioner's home in Cuba, New York, was located on land which petitioner leased from the State of New York. The house was owned by petitioner. *265 To be entitled to a casualty loss deduction under section 165(c) (3) one must demonstrate actual physical damage to the property with respect to which, and because of which, the loss is claimed. A mere decrease in value of one's property due to other causes does not give rise to a deduction. Pulvers v. Commissioner, 407 F.2d 838, 839 (C.A. 9, 1969), affirming 48 T.C. 245 (1967); Squirt Co., 51 T.C. 543, 547 (1969), affirmed per curiam 423 F.2d 710 (C.A. 9, 1970). In the instant case petitioner does not argue that physical damage to his own property caused the loss of value he is claiming as a deduction - such physical damage was fully compensated by insurance. Rather, he is claiming a loss for a mere decline in value of the house due to another factor, namely the destruction of the tree, which was owned by the State of New York. [6] Hence, under the rule described above, no deduction for such loss in value is allowable. West v. United States, 163 F. Supp. 739, 741 (E.D. Pa. 1958), affirmed per curiam 259 F.2d 704 (C.A. 3, 1958). That petitioner *266 was lessee as to the damaged tree does not help him in the instant case. Damage to property which one is leasing entitles one to a deduction for the loss sustained to the leasehold interest. Samuel Towers, 24 T.C. 199, 239 (1955), affirmed sub nom.; Bonney v. Commissioner, 247 F.2d 237, 238 (C.A. 2, 1957); West v. United States, 163 F. Supp. at 741. Cf. Bliss v. Commissioner, 256 F.2d 533, 535 (C.A. 2, 1958) (interest of life tenant under a will), reversing 27 T.C. 770 (1957). However, petitioner did not present any evidence demonstrating that he had any basis in such leasehold - as opposed to a basis in the house which he owned - and thus we can give him no deduction for any loss to the leasehold interest. Samuel Towers, 24 T.C. at 239-40; Bliss v. Commissioner, 256 F.2d at 536; sec. 165(b); cf. Helvering v. Owens, 305 U.S. 468, 471 (1939). As to the dock which he owned, however, *267 we think petitioner is entitled to claim some amount as a loss deduction. The problem is that petitioner has given us very little help in ascertaining the amount of such loss. The only evidence he presents are pictures taken in 1972, three years after the damage occurred which show the dock as it stood on its new pilings. The old pilings can be seen lying under the dock but partially covered by snow. While the dock was repaired in 1970, petitioner did not submit nor even estimate the amounts he had to expend on such repair. While the record is discouragingly meager in establishing the amount of petitioner's loss, we feel that petitioner has shown that he has sustained some loss - though not the full $900 he is claiming. Using our best judgment, and invoking the Cohan principle ( Commissioner v. Cohan, 39 F.2d 540, 543-4 (C.A. 2, 1930), affirming in part and remanding 11 B.T.A. 743 (1928)), we find petitioner entitled to a casualty loss deduction of $300 for the damage to his dock. Issue 6. Bad Debt Loss Deduction Finally, petitioner has claimed a bad debt loss deduction of $1,151.40 for the difference between the cost he incurred in completing *268 the concrete and paving work on his property, and the price he would have had to pay P & P had that company properly performed on their contract with him. A representative from P & P had orally agreed sometime in 1969 to reimburse petitioner for such amount.
In order to qualify for a bad debt deduction under section 166 the taxpayer must demonstrate both that the debt had real worth at sometime during the taxable year, and that it become worthless by the end of such year. Herbert W. Dustin, 53 T.C. 491, 501 (1969), affd. 467 F.2d 47, 48 (C.A. 9, 1972). In the instant case petitioner has presented no evidence to show that P & P's promise to him had any real value at any time, or that, assuming such value to have existed at some time in 1969, that such value was lost by the close of the year. Thus, we hold that petitioner is not entitled to the bad debt loss deduction he claims. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The lot which petitioner leased from New York State fronted on Cuba Lake. ↩
3. Petitioner contends that he sustained a $1,000 loss because of the damage to his dock. Because of the $100 nondeductibility provision in section 165(c) (3)↩, however, petitioner claimed only $900 as a deductible loss on his return. 4. While petitioner did present a record of the car-rental payment while in Texas, he did not show that such expenses was not one of those reimbursed by American. ↩
5. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and logding other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; SEC. 165. LOSSES. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and ↩
6. Because petitioner has presented no evidence to the contrary, we must assume that the tree, as part of the property which petitioner leased, was owned by the State of New York. ↩