Dale W. FOLKMAN and Judy A. Folkman, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

Dennis E. DEHNE and Connie S. Dehne, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

Nos. 77–3531, 77–3532.

United States Court of Appeals, Ninth Circuit.

March 14, 1980.

William A. Whitledge, Tax Div., Dept. of Justice, Washington, D. C., argued, for defendant-appellant; M. Carr Ferguson, Washington, D. C., on brief.

Ernest J. Maupin, III, Walther, Key, Maupin & Oats, Reno, Nev., for plaintiffs-appellees.

Before BROWNING and GOODWIN, Circuit Judges, and BARTELS,* District Judge.

GOODWIN, Circuit Judge:

The United States appeals the district court's judgment that Dale Folkman and Dennis Dehne [1] were entitled to deductions for the costs of traveling between their airline duty posts and Reno, Nevada, where their families lived and where the taxpayers served with the Nevada Air National Guard, for the tax years 1971 and 1972, and that Folkman could deduct the costs of food and lodging at his airline post during the same years. We reverse.

Folkman, an airline pilot, has been stationed in San Francisco International Airport as an employee of Pan American World Airways since 1966. Folkman flew only infrequently as a pilot with Pan American because of his low seniority. His principal work was that of navigator. This work gave him little opportunity to keep up basic flying skills. To maintain his proficiency as a jet pilot, and to earn extra income, Folkman decided, soon after joining Pan American, to enlist in a military reserve program. The closest Air National Guard unit that had openings for pilots of jet aircraft was located in Reno, Nevada, about 250 miles from San Francisco. As a condition of membership, the Nevada Air National Guard required all pilots to reside in the Reno area. Accordingly, in August 1966, Folkman and his family moved from their home near the San Francisco airport, to Reno. In October, 1966, Folkman joined the Air National Guard.

Beginning in 1966, and continuing through 1971 and 1972, Folkman divided his time between flying with Pan American from his San Francisco base and flying for the Nevada Air National Guard. During an average month Folkman spent 10 to 13 days performing services for Pan American and four to seven days fulfilling his military reserve flying obligations.[2] He was generally able to coordinate his National Guard schedule with his duties for Pan American. Whether or not he was scheduled to fly for the National Guard on a given day, Folkman routinely returned to Reno immediately after his Pan American flights. During 1971 and 1972, the relevant tax years, Folkman spent more time in Reno than with Pan American, but derived approximately 85 per cent of his earnings from his Pan American employment. The remainder of his income came from his military reserve service.[3]

Dennis Dehne, like Folkman, was a Pan American employee initially assigned to San Francisco. For many of the same reasons that motivated Folkman, Dehne moved to Reno, established residence, and joined the Air National Guard in 1967. For three years, Dehne traveled between his Pan American base in San Francisco and his National Guard post and family residence in Reno. When Pan American assigned him to a new post at Kennedy Airport in New York City in 1970, Dehne continued to fly for the Nevada National Guard, dividing time between Reno, where his family remained, and New York. As with Folkman, in 1971 and 1972, Dehne worked more days for Pan American than for the National Guard and derived most of his income from his Pan American employment.[4]

---

* The Honorable John R. Bartels, United States District Judge for the Eastern District of New York, sitting by designation.

1. Judy Folkman and Connie Dehne are parties only because they filed joint income tax returns with their husbands.

2. In 1971, Folkman worked for Pan American on 134 days and served with the Nevada Air National Guard on 66 days. In 1972, he was employed by Pan American on 101 days and by the National Guard on 61 days.

3. In 1971, Folkman earned $27,445 from his Pan American employment, and $4,300 from the National Guard. The corresponding figures for 1972 are $27,890 and $4,612.

4. Dehne worked for Pan American on 164 days and for the Air National Guard on 65 days in 1971. The corresponding figures for 1972 are 102 days and 78 days.

Dehne's Pan American salary was $20,508 and his Air National Guard earnings was $3,479 in 1971. The corresponding amounts for 1972 are $23,408 and $4,300.

In 1971 and 1972, Folkman and Dehne filed income tax returns claiming deductions for the costs of traveling between Reno and their airline stations.[5] Folkman also claimed deductions for the cost of meals on days when he served with the National Guard in Reno, and Dehne deducted food and lodging expenses incurred at his Pan American post in New York.

The Commissioner disallowed these claimed deductions and assessed additional taxes for the resultant deficiencies. The taxpayers paid the assessments in full and subsequently submitted claims for refunds of these payments to the Internal Revenue Service. The Service denied the claims, and Folkman and Dehne brought refund actions in district court.

The district court decided Folkman's and Dehne's cases together, and found that the taxpayers' "tax homes" were in Reno and not at their Pan American duty posts. The court held that the costs of round trips between Reno and their airline bases were "traveling expenses * * * while away from home in the pursuit of a trade or business" under 26 U.S.C. § 162(a)(2). The court also held that the costs of food and lodging incurred at the airline posts were deductible under § 162(a)(2), but, because only Folkman's San Francisco lodging expenses were established by competent evidence and business records, none of the other food and lodging claims would be allowed.

We first consider whether the taxpayers could deduct the cost of round trips between Reno and their Pan American duty posts. Under § 162(a)(2), the tax code provision on which Folkman and Dehne rely, transportation expenses are deductible only if they are incurred "while away from home" and "in the pursuit of a trade or business."[6] The government argues that the district court erred in identifying Reno, rather than the taxpayers' abodes at their airline duty posts,[7] as their "tax homes," and that the taxpayers' reasons for traveling "away" from these "tax homes" to Reno, were primarily personal, and not related to "trade or business."

■ A taxpayer's "home," for purposes of I.R.C. § 162(a)(2), is the taxpayer's abode at his or her principal place of employment. *Coombs v. Commissioner,* 608 F.2d 1269, 1273–76 (9th Cir. 1979).[8] However, when, as here, a taxpayer both earns a substantial income and stays overnight in each of two locations, the determination of which is the "principal place of employment" may become difficult. In these circumstances, we find it useful to apply the three-part definitional test proposed by the government and adopted by the Sixth Circuit in *Markey v. Commissioner,* 490 F.2d 1249 (6th Cir. 1974).

In *Markey, supra,* the taxpayer worked during the week at a General Motors facility in Michigan where he earned about $1000 a month. In addition, he traveled each weekend to a town in Ohio where he had a

---

**5.** The record does not make clear the exact effect of free, or discount, air travel benefits sometimes extended by one airline to flight crews of other airlines. In any event, the claimed deductions were modest in light of the National Guard earnings on which taxes were paid. The Internal Revenue Service disallowed travel deductions by Folkman totaling $1,140 in 1971 and $1,171 in 1972, and assessed additional taxes of $320 and $374 for those years. In Dehne's case, the Service disallowed deductions totaling $1,655 in 1971 and $2,483 in 1972, and assessed additional taxes of $447 and $695 in those years.

**6.** Internal Revenue Code § 162(a) reads in relevant part as follows:

"In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable

year in carrying on any trade or business, including—

* * * * * *

"(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business;
* * *."

**7.** When the taxpayers were required to remain overnight at their airline duty posts, they stayed at hotels. These hotels were their duty post "abodes" for tax purposes.

**8.** *See* Venuti, *A Taxpayer's Home—A Matter of Choice,* 17 De Paul L.Rev. 278 (1968); Note, *A Home is Not a Tax Home,* 49 Va.L.Rev. 125 (1963).

home and maintained several individual businesses which produced marginal income. Markey asserted that his "tax home" was in Ohio and claimed deductions under § 162(a)(2) for the costs of traveling between Michigan and Ohio and for living expenses in Michigan. Employing a subjective test to determine Markey's tax home, the Tax Court allowed the deductions, because it found that his Ohio business interests were more important to the taxpayer than his Michigan job and that they required his regular presence in Ohio. The Sixth Circuit reversed. It required the application of an objective test in which the following factors are considered:

> "(1) the length of time that taxpayer spent in [the two locations]; (2) the degree of taxpayer's business activity in each place; and (3) the relative proportion of taxpayer's income derived from each place." 490 F.2d at 1252, 1255.

Under the announced test, Markey's "home" for tax purposes would, no doubt, be in Michigan. As such, his living expenses in Michigan, because not incurred "away from home," would not be deductible.[9]

Here, Folkman and Dehne spent a marked majority of the relevant time in Reno.[10] However, both taxpayers devoted significantly more working time to Pan American base-related activities than to their Air National Guard duties.[11] And both Folkman and Dehne derived the overwhelming portion of their incomes from their Pan American jobs.[12] Applying the *Markey* test to these facts, we conclude that each taxpayer's tax home was his airline duty base, and not at Reno. *Accord, Frank v. United States,* 577 F.2d 93, 97 (9th Cir. 1978); *Wills v. Commissioner,* 411 F.2d 537, 539–40 (9th Cir. 1969).

Our determination that the appellees' tax homes are located in their airline base cities, rather than in Reno, shifts the focus of our inquiry. Under § 162(a)(2), "away from home" travel expenses are deductible only if they are "ordinary and necessary" and incurred "in the pursuit of a trade or business." *Commissioner v. Flowers,* 326 U.S. 465, 470, 66 S.Ct. 250, 90 L.Ed. 203 (1946). Unlike the district court which, having found that the "tax homes" were in Reno, concluded that travel from these "homes" to the airline bases was "ordinary and necessary" and "in the pursuit of a trade or business," we have a different starting point. We must consider whether travel from the duty post city to Reno, while concededly "away from home," satisfied the other conditions for deductibility. If not, the round trip expenses were nondeductible commuting costs.

The government argues that the taxpayers traveled to Reno primarily for personal reasons, to visit their families, rather than "in pursuit of a trade or business," to serve

---

9. The effect of this result on the deductibility of Markey's round trip transportation costs is unclear.

   The Commissioner originally allowed deductions for the cost of twelve round trips as "necessary" expenses incurred in managing Markey's Ohio businesses, but disallowed deductions for the remaining weekly trips. The Tax Court reversed the Commissioner, holding that all of Markey's claimed deductions, including those for the weekly round trips, should be allowed. The Sixth Circuit, in turn, reversed the Tax Court but did not specifically address the deductibility of transportation costs, remanding the case for further "not inconsistent" proceedings. 490 F.2d at 1255. The result of those subsequent proceedings is not recorded.

10. Although the record before us is somewhat ambiguous, it appears that Folkman was in Reno 210 days in 1971 and 242 days in 1972

and that Dehne was in Reno 161 days in 1971 and 245 days in 1972.

11. *See* notes 2 and 4, *supra.*

12. *See* notes 3 and 4, *supra.* The taxpayers argue that we should not consider time spent on Pan American flights away from their duty posts or income attributable to that time because, in applying the *Markey* criteria, only employment activity at the duty posts is relevant. Adoption of this restrictive concept of "tax home" would create virtually insurmountable practical and administrative difficulties in identifying the § 162(a)(2) "homes" of taxpayers who travel on the job. This we decline to do. *Cf.* Rev.Rul. 54–497, 1954–2 C.B. 75, 77 (railroad employees' post of duty is not aboard the train, but at terminal where train begins and ends runs).

with the Nevada Air National Guard.[13] In support of this contention, the government cites a finding by the district court that even if Folkman and Dehne were not members of the Air National Guard, they would have returned to Reno to be with their families after their Pan American flights.

Counsel for the government misperceives the nature of § 162(a)(2)'s business purpose requirement. While Folkman and Dehne might have returned to their family homes after their flights, but for a business exigency—the Nevada Air National Guard's residency requirement—those homes would have been located near their airline duty posts, rather than in Reno. The district court found that both Folkman and Dehne moved to Reno from the San Francisco Bay area "because they were required to do so in order to obtain and retain employment as pilots with the Nevada Air National Guard" and that "[r]esidences in Reno, Nevada were established for sound business reasons and were not dictated by personal desire or fancy."

If the Air National Guard imposed no residency requirement and the taxpayers' families lived in the duty post cities, instead of Reno, travel expenses on those occasions when the taxpayers served with the National Guard would have been deductible. *See* Rev.Rul. 54–147, 1954–1 C.B. 51, 52. To deny identical deductions when, as here, business exigencies compelled the taxpayers' families to live in the secondary employment locale, would be both inconsistent and unjust. *See Puckett v. Commissioner,* 56 T.C. 1092 (1971).

The government's reliance on *Dean v. Commissioner,* 35 T.C.M. 1706 (1976), is misplaced. There, a pilot for Trans World Airlines, whose duty post during the taxable years in question was at Kennedy Airport in New York, had moved from New Orleans to Kansas City and later flew for the United States Air Force Reserve in the Kansas City area. The Tax Court affirmed the Commissioner's disallowance of deductions

for transportation expenses between New York and Kansas City, finding that, despite Dean's air reserve service near Kansas City, he traveled to Kansas City primarily for personal reasons. The court found that Dean had not moved to Kansas City "solely to serve" in that area's reserve unit, but that he moved to Kansas City for personal reasons and later transferred to that unit. In addition, it does not appear that Dean's Air Force Reserve unit required its members to reside in the Kansas City area. Consequently, Dean's continued residence in Kansas City, following his TWA transfer to Kennedy Airport, was motivated by personal convenience and not by business necessity. Here, however, both Folkman and Dehne moved to Reno in order to join the National Guard. They and their families lived in Reno because of the Nevada Air National Guard's residence requirement, not for personal, non-business reasons.

Other cases which the government cites are similarly distinguishable. In *Commissioner v. Flowers,* 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), the taxpayer's activities at his major and minor duty posts were closely related and, but for his desire to live at the latter, could have been performed entirely at the former. There was no business related residence requirement, as there was here. *Wills v. Commissioner,* 411 F.2d 537 (9th Cir. 1969), did not address the deductibility of expenses incurred in traveling between major and minor duty posts. *Bisson v. Commissioner,* 34 T.C.M. 747 (1975), *Preseault v. Commissioner,* 34 T.C.M. 685 (1975), and *Fryer v. Commissioner,* 33 T.C.M. 403 (1974), all involved taxpayers who did not have substantial secondary employment near their homes. And in *Markey v. Commissioner, supra,* the Commissioner had allowed deductions for a number of trips, as necessary for business purposes.

Finally, the government contends that even if Folkman and Dehne were entitled to deductions under § 162(a)(2) for some round trips between the airline duty posts

---

**13.** Treas.Reg. § 1.162–2 (1958) provides that if a taxpayer has mixed motives for traveling, transportation expenses "are deductible only if the trip is related primarily to the taxpayer's trade or business."

and Reno, they were not entitled to deduct the cost of all visits. The government asserts that each taxpayer claimed deductions for several visits during which he performed no National Guard duties.

If the taxpayers sought to deduct travel costs on occasions when they did not serve with the National Guard, the requirements of § 162(a)(2) were not satisfied as to those trips. Expenditures for such visits were neither "necessary" to carry on the taxpayers' business, nor incurred "in the pursuit" of their military business. Thus, they are not proper deductions.

From the record before us, we are unable to determine the validity of this claim by the government. Accordingly, we vacate the district court's judgment and remand the cases to that court for findings on whether either of the taxpayers did, indeed, seek to deduct costs of round trips between his Pan American duty base and Reno on occasions when he did not serve with the Nevada Air National Guard. These findings, when made, should facilitate a conclusion of the matters still open.

The district court's finding that Folkman could deduct the costs of meals and lodging at his airline station was premised on its holding that Reno, and not the taxpayer's abode at his duty post, was his tax home. Because we have concluded that the district court's identification of Folkman's tax home was erroneous, we must reverse its holding concerning overnight expenses.[14]

The judgment of the district court is vacated and the cases are remanded to that court for entry of modified judgments to be based upon the court's findings on the number of trips to Reno that included National Guard duty.

Vacated and remanded.

---

**14.** Folkman and Dehne could, consistent with our determination of their "tax homes," claim deductions for substantiated overnight expenses incurred in Reno on days of which they served with the Nevada Air National Guard.

*See* Rev.Rul. 54–497, 1954–2 C.B. 75, 80–81. However, both taxpayers concede that they are not entitled to deductions for expenses during the relevant tax years.