ELIZABETH T. DOUGHERTY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dougherty v. Commissioner
Docket No. 17759-89
United States Tax Court
T.C. Memo 1991-442; 1991 Tax Ct. Memo LEXIS 491; 62 T.C.M. (CCH) 680; T.C.M. (RIA) 91442; September 10, 1991, Filed *491 Decision will be entered for the respondent. William A. Dougherty, for the petitioner. Elizabeth L. Carlson, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's 1982 Federal individual income tax in the amount of $ 34,476. Petitioner resided in Pennsylvania at the time the petition in this case was filed. The only issue for decision is whether petitioner's husband was a "qualified individual" for the section 911[1] foreign earned income exclusion in the year at issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts filed by the parties and attached exhibits are incorporated in this opinion. Petitioner and her husband, Paul Dougherty (Mr. Dougherty), filed a joint Federal *492 individual income tax return in 1982. Mr. Dougherty died during March of 1987. He was originally named as a copetitioner in the petition filed in the instant proceeding but was formally dismissed early in the trial proceedings. Both Mr. Dougherty and petitioner were U.S. citizens in 1982. However, from 1977 until 1984 they lived in Playas de Rosarito, Baja California, Mexico. From 1952 until 1982, Mr. Dougherty was employed as a pilot for Trans World Airlines (TWA). Prior to 1981, he qualified only as a 707 pilot. Mr. Dougherty qualified to pilot 747's in 1981 but lacked seniority to actually fly them. After 1981, TWA discontinued using 707's over the ocean and instead used only 747's. Because Mr. Dougherty preferred piloting international flights, yet lacked seniority to pilot flights that crossed the ocean, he only piloted intra-European flights in 1982. To pilot his intra-European flight assignments, TWA flew Mr. Dougherty free from California (which was near his Mexico home) to John F. Kennedy International Airport in New York City (JFK) and then from JFK to his destination city in Europe. His destination cities included London, Athens, Frankfurt, Milan, and Paris. *493 After completing his European flight assignments, Mr. Dougherty would fly back to JFK as a passenger and then back to California, again at no expense to him. Mr. Dougherty always flew as a passenger on flights within the United States and flights to and from the United States. His flights to and from Europe were arranged by TWA for him and his crew. TWA is an American airline company with offices only in Jamaica, New York, and Kansas City, Missouri. In 1982, TWA had a foreign address in Paris but apparently had no foreign offices. TWA deemed Mr. Dougherty to be "based" or "domiciled" at JFK in 1982. In a letter to the IRS, Mr. Dougherty claimed that JFK was his base station in 1982. TWA and Mr. Dougherty had a contract in effect in 1982 that required TWA to reimburse Mr. Dougherty for a certain amount of traveling expenses he paid when he traveled away from his base station. TWA reimbursed Mr. Dougherty in 1982 for expenses of $ 1,206 that he paid when he traveled away from JFK. Mr. Dougherty claimed a deduction in 1982 for the remaining unreimbursed expenses of $ 354 that he paid when he traveled away from JFK. In 1982, Mr. Dougherty flew for only 4 or 5 months and effectively *494 retired from TWA on July 3 of the same year. He earned $ 92,788 in 1982 from TWA which he reported as taxable income. Petitioner claimed a foreign earned income exclusion for this year in the amount of $ 72,091. In his notice of deficiency, respondent determined that petitioner incorrectly calculated the joint taxable income for 1982. Respondent disallowed the foreign earned income exclusion of $ 72,091, claiming petitioner had not established that her husband was a "qualified individual" for purposes of the exclusion. OPINION 1. "Qualified Individual" for Purposes of Section 911
Section 911(a)(1) allows a "qualified individual" to exclude foreign earned income from gross income. Section 911(d)(a) defines a "qualified individual" as one who has a "tax home" in a foreign country and who is either: (1) A citizen of the United States and establishes to the satisfaction of the Secretary that he has been a "bona fide resident" of a foreign country for an uninterrupted period which includes an entire taxable year ("bona fide residence test"); or (2) a citizen or resident of the United States who is physically present in a foreign country for at least 330 full days *495 during the taxable year ("physical presence test"). Therefore, to be entitled to the foreign earned income exclusion within the context of section 911, an individual must have his "tax home" in a foreign country and must satisfy either the "bona fide residence" requirement or the "physical presence" requirement of section 911(d)(1). Because we conclude that petitioner failed to establish that Mr. Dougherty had a tax home outside of the United States in the year at issue, it is unnecessary for us to determine whether petitioner satisfied either the bona fide residence or the physical presence requirement. Regarding the "tax home" requirement, for purposes of section 911, this term is defined in section 911(d)(3), which provides as follows: Tax home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). * * * Section 1.911-2(b), Income Tax Regs., expands upon the reference to section 162(a)(2) and provides as follows: (b) * * * the term "tax home" has the same meaning which it has for purposes of section 162(a)(2) (relating to travel expenses *496 away from home). Thus, under section 911, an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business * * * This Court has held that as a general rule "home," as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). Where one's home is for tax purposes is a question of fact. Coombs v. Commissioner, 608 F.2d 1269, 1274 (9th Cir. 1979), affg. in part, revg. in part 67 T.C. 426 (1976) (revd. on factual issue). Numerous cases have treated flight personnel's base airports as their principal place of business. See, e.g., Folkman v. United States, 615 F.2d 493 (9th Cir. 1980); Lagrone v. Commissioner, T.C. Memo 1988-451, affd. without published opinion 876 F.2d 893 (5th Cir. 1989). Respondent alleges that New York City was Mr. Dougherty's tax home in 1982 because TWA deemed him to be "based" at JFK. Based upon Mr. Dougherty's and TWA's representations that *497 JFK was Mr. Dougherty's base station and based on Mr. Dougherty's employment connections with JFK, we agree with respondent that Mr. Dougherty's tax home for 1982 was JFK. Both Mr. Dougherty and TWA represented in several ways that his base station was JFK. Mr. Dougherty told the IRS his base station was JFK, and TWA's personnel records indicated the same. Further, we find it significant that TWA reimbursed Mr. Dougherty for a certain percentage of expenses he paid while traveling away from JFK. Moreover, Mr. Dougherty actually deducted unreimbursed travel expenses under section 162 for amounts expended while traveling away from JFK. This fact indicates that for tax reasons other than the foreign earned income exclusion, Mr. Dougherty deemed JFK to be his tax home. Mr. Dougherty's employment connections to JFK also indicate New York was his tax home. While Mr. Dougherty actually piloted no planes into or out of JFK, TWA had the responsibility of transporting him and his crew members between JFK and any other airport where his flight series would end or begin. Therefore, Mr. Dougherty's flight assignments originated and ended at JFK in New York. While partial performance of *498 his employment did entail piloting planes in foreign countries, Mr. Dougherty's employment duties began and ended at JFK. Furthermore, TWA had no base stations outside of the United States at which Mr. Dougherty could have been based, even though TWA did have a foreign address in Paris. In addition, Mr. Dougherty never flew into or out of one particular airport in Europe. Instead, he flew into or out of London, Athens, Frankfurt, Milan, or Paris. Therefore, he had no actual headquarters or base station in Europe. Based on the above-referenced objective facts, we conclude that Mr. Dougherty's tax home for 1982 was New York. Because his tax home was not located outside of the United States for 1982, he was not a "qualified individual" for purposes of section 911 and, therefore, petitioner is not eligible for the foreign earned income exclusion in the taxable year at issue. 2. Business Expense Deduction and Theft Loss Deduction
In his notice of deficiency, respondent also disallowed a business expense deduction and a theft loss deduction that petitioner took in 1982. In her petition for redetermination of deficiency, petitioner did not provide any assignment of error *499 pertaining to either of these deductions. Rule 34(b)(4) requires a petitioner to include in a petition for redetermination clear and concise assignments of each and every error alleged to have been committed by the Commissioner. If a petitioner fails to raise any issue in the assignment of errors, such issues are deemed to be conceded. Rule 34(b)(4). Therefore, because petitioner failed to provide any assignment of error pertaining to the business expense deduction or the theft loss deduction, she is deemed to have conceded both of these issues, and the losses are disallowed. Therefore, we find it unnecessary to address either of these issues further. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩