TRACY M. STRIGHT AND EILEEN G. STRIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stright v. Commissioner
Docket No. 14144-91
United States Tax Court
T.C. Memo 1993-576; 1993 Tax Ct. Memo LEXIS 587; 66 T.C.M. (CCH) 1490; December 7, 1993, Filed *587 Decision will be entered for respondent. P, an airline pilot, was employed by a U.S. corporation, but lived in the United Kingdom for the years in issue. P elected to exclude a portion of his income pursuant to sec. 911, I.R.C.Held: P was not qualified to elect under sec. 911, I.R.C., because he did not have a tax home in a foreign country for the years in issue. For petitioner: David J. Cartano. For respondent: Linette B. Angelastro. NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1987
$ 12,929.06
1988
11,213.27
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioner Tracy Stright (petitioner) had a foreign tax home. (2) Whether petitioner was a bona fide resident of a foreign country. (3) Whether petitioner had foreign earned income. All of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this *588 reference. Petitioners filed joint Federal income tax returns for the years in question and resided in Phoenix, Arizona, at the time they filed their petition. Petitioner was employed by Trans World Airlines (TWA), a U.S. corporation, as an airline pilot during 1987 and 1988. Throughout 1987 and 1988, he was based at John F. Kennedy International Airport in New York, New York. Petitioner and his wife, petitioner Eileen Stright (Mrs. Stright), were married in 1985 and remained married throughout 1987 and 1988. According to TWA's records, petitioners maintained a residence at 10 Upper Addison Road, London, England, from August 1, 1985, through January 17, 1989. Petitioner stayed there when he was physically present in the United Kingdom during 1987 and 1988. While present in the United States or other countries in the performance of his job duties during 1987 and 1988, petitioner stayed in hotels or motels. Petitioner is a U.S. citizen, and Mrs. Stright is a citizen of the United Kingdom. Petitioner owned real property located at 20246 Midland Drive, Sonora, California, during 1987 and until December 12, 1988, when such property was sold. Petitioner owned this property with *589 his ex-wife Georgiana Stright. This property was occupied by Georgiana Stright, and petitioner did not live or stay at this address. On December 30, 1988, petitioners purchased real property located at 4642 E. Karen Drive, Phoenix, Arizona. During 1987 and 1988, petitioner had an interest in the Stright-McConnell Partnership, which invested in United States real property. During 1987 and 1988, petitioner maintained U.S. bank accounts. One account was located at the Arizona Bank; two accounts were located at the Security Pacific National Bank. Petitioner also maintained an account at the TWA Credit Union in Kansas City, Missouri. Petitioner deposited his pay from TWA into his U.S. bank accounts. Petitioner maintained only credit cards issued by U.S. banks and/or corporations during 1987 and 1988. Petitioners elected to exclude part of their income pursuant to section 911 on both of their 1987 and 1988 Federal income tax returns. Section 911(a) provides: (a) Exclusion From Gross Income. -- At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation *590 under this subtitle, for any taxable year -- (1) the foreign earned income of such individual, and (2) the housing cost amount of such individual.
Section 911(b) provides in pertinent part: (1) Definition. -- For purposes of this section -- (A) In General. -- The term "foreign earned income" with respect to any individual means the amount received by such individual from sources within a foreign country or countries which constitute earned income attributable to services performed by such individual during the period described in subparagraph (A) or (B) of subsection (d)(1), whichever is applicable.
Section 911(d) provides in pertinent part: (1) Qualified Individual. -- The term "qualified individual" means an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least *591 330 full days in such period.
* * * (3) Tax Home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States.
Thus, to be qualified for the section 911 foreign earned income exclusion, a taxpayer must meet three criteria: 1) he must have a tax home in a foreign country; 2) he must either be (a) a U.S. citizen who, in accordance with criteria spelled out in section 911(d)(1)(A), is a bona fide resident of a foreign country, or (b) a citizen or resident of the United States who is present in a foreign country for 330 days during 12 consecutive months; and 3) he must have foreign earned income. We first address the issue of whether petitioner had a "tax home" in the United Kingdom, a "foreign country", in 1987 and 1988, because if not, petitioner cannot prevail regardless of whether he was a "bona fide" resident of the United Kingdom in those years. The burden is on petitioners to establish that petitioner's tax home was *592 in a foreign country for the years in question. Rule 142(a). The term "tax home" is statutorily defined as an "individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States." Sec. 911(d)(3). "Tax home" for purposes of section 911 is considered to be located at an individual's regular or principal (if more than one regular) place of business, but an individual is not considered to have a tax home in a foreign country for any period for which his abode is in the United States. Sec. 1.911-2(b), Income Tax Regs.; see Harrington v. Commissioner, 93 T.C. 297, 303 (1989) ("Section 911(d)(3) defines the term 'tax home' as the taxpayer's home for purposes of section 162(a)(2)"). The United States Court of Appeals for the Ninth Circuit (the court to which an appeal of this case would normally lie) has held that "a taxpayer's 'home,' for purposes of I.R.C. section 162(a)(2), is the taxpayer's abode at his or her principal place of employment." Folkman v. United States, 615 F.2d 493, 495 (9th Cir. 1980) *593 (citing Coombs v. Commissioner, 608 F.2d 1269, 1273-1276 (9th Cir. 1979), affg. in part and revg. (on a different issue) in part 67 T.C. 426 (1976)); see also, Lagrone v. Commissioner, T.C. Memo. 1988-451, affd. without published opinion 876 F.2d 893 (5th Cir. 1989). Thus a taxpayer's home, for purposes of section 162(a)(2), focuses on two elements: 1) an abode; and 2) a principal place of employment. We take up the issue of a taxpayer's principal place of employment first. The Court of Appeals for the Ninth Circuit has addressed this issue in Folkman v. United States, supra, which involved two taxpayers, both of whom were airline pilots for Pan American Airlines. One of the taxpayers had his airline duty base in New York, New York, and the other taxpayer had his airline duty base in San Francisco, California. When the taxpayers were at their duty bases, they stayed at motels. Both taxpayers were also members of the Nevada Air National Guard (Guard) in Reno, Nevada, and received wages from the Guard. Each taxpayer and his family *594 lived in Reno and claimed Reno as his tax home. To determine whether Reno or the respective airline duty bases were the taxpayers' tax homes, the court applied the three factors set out in Markey v. Commissioner, 490 F.2d 1249 (6th Cir. 1974), revg. T.C. Memo 1972-154. Folkman v. United States, 615 F.2d at 495. These factors are: 1) The length of time that the taxpayer spent in each of the two locations; 2) the degree of the taxpayer's business activity in each place; and 3) the relative proportion of the taxpayer's income derived from each place. Markey v. Commissioner, supra at 1252. The Court of Appeals in Folkman concluded that the airline duty bases were the taxpayers' tax homes because although the taxpayers spent a majority of their time in Reno, both taxpayers devoted significantly more working time to Pan American base-related activities than to their Guard duties. Folkman v. United States, supra at 496. While Folkman focused on which of two places of employment constituted the taxpayers' principal place of employment, *595 the instant case involves a taxpayer who had only one employer. The very nature of a pilot's employment requires him to fly into and out of different airports. Thus our inquiry becomes whether an airline pilot can be said to have more than one principal place of employment because he flies into and out of more than one airport during the course of his employment. The Court of Appeals considered this proposition in Folkman: The taxpayers argue that we should not consider time spent on Pan American flights away from their duty posts or income attributable to that time because, in applying the Markey criteria, only employment activity at the duty posts is relevant. Adoption of this restrictive concept of "tax home" would create virtually insurmountable practical and administrative difficulties in identifying the section 162(a)(2) "homes" of taxpayers who travel on the job. This we decline to do. * * * [Id. at 496 n.12.]
We hold that all of petitioner's employment activities related to his airline duty base will be attributed to that duty base. Petitioner had only one source of employment and only one duty base during 1987 and 1988. *596 Petitioner was employed by TWA and his duty base was John F. Kennedy International Airport in New York, New York. Therefore, petitioner's principal place of employment in 1987 and 1988 was New York, New York. See Jones v. Commissioner, 927 F.2d 849, 855-857 (5th Cir. 1991), revg. on a different issue T.C. Memo. 1989-616. We turn next to the definition of abode. We find Coombs v. Commissioner, 608 F.2d at 1275-1276, to be enlightening: as between various possible "abodes," the abode or at least the locale of the abode which is located in the vicinity of the taxpayer's principal place of business or employment, or as close thereto as possible, will be considered the taxpayer's tax home for purposes of * * * section 162(a)(2). In addition, when a taxpayer accepts employment either permanently or for an indefinite time away from the place of his usual abode, the taxpayer's tax home will shift to the new location -- the vicinity of the taxpayer's new principal place of business. In such circumstances, the decision to retain a former residence is a personal choice, and the expenses of traveling *597 to and from that residence are non-deductible personal expenses. [Fn. ref.; citations omitted.]
We interpret this passage to mean that a taxpayer may have more than one abode and that his tax home shifts in accordance with his principal place of employment, even though he may choose to maintain other abodes. Petitioner's work necessitated his staying in motels and hotels while working. These motels and hotels became petitioner's abodes in addition to his usual abode at 10 Upper Addison Gardens, London. However, it was his abode at New York, New York, his principal place of business, that was petitioner's tax home in 1987 and 1988. Petitioner did not have a tax home in a foreign country in 1987 and 1988; thus he was not a qualified individual who may elect section 911 for those years. Because petitioner lacks one of the criteria necessary to elect section 911, we need not address the remaining criteria. Decision will be entered for respondent.