Lee E. COOMBS and Judy B. Coombs et al., Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

James C. COX et al., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 77–2026, 78–2036.

United States Court of Appeals, Ninth Circuit.

Nov. 23, 1979.

Barry L. Guterman, Hochman, Salkin & DeRoy, Beverly Hills, Cal., for petitioners-appellants.

Anthony Ilardi, Jr., Washington, D. C., Robert L. Brosio, Los Angeles, Cal., for respondent-appellee.

Before TRASK and WALLACE, Circuit Judges, and ZIRPOLI,* District Judge.

WALLACE, Circuit Judge:

Two groups of taxpayers appeal from two sets of unfavorable judgments, one entered by the Tax Court and one entered by the district court. The appellants in No. 77–2026 are taxpayers whose fifty-two cases were consolidated for trial in the Tax Court. The Tax Court's opinion, *Coombs v. Commissioner*, is reported at 67 T.C. 426 (1976). The appellants in No. 78–2036 are taxpayers whose fifteen cases were consolidated for trial in the District of Nevada. The district court's opinion, *Cox v. United States*, is reported at 78–2 U.S.T.C. (CCH) ¶ 9572 (D.Nev.1978). Because the two cases arise out of almost identical factual circumstances, the appeals have been consolidated.

In each set of cases the taxpayers sought to exclude from income various allowances from their employers or, in the alternative, to deduct from their gross incomes various expenses pursuant to the provisions of the Internal Revenue Code of 1954 (I.R.C.). The taxpayers also allege that the Commissioner of Internal Revenue discriminated against them when it treated the allowances received from their employers as income. Both the district court and the Tax Court ruled against the taxpayers on each of their claims, although in some instances for different reasons. We affirm the district court judgments and affirm in part and reverse and remand in part the judgments of the Tax Court.

I

The taxpayers each were employees at the Nevada Test Site during at least some portion of the time period 1970–73.[1] The Test Site is used as a nuclear testing facility by the United States Government, although the government carries on other activities there as well. Las Vegas, Neva-da, the closest habitable community to the Test Site, is 65 miles from the Camp Mercury control point, located at the southernmost boundary of the Test Site, and is 130 miles from the northernmost boundary of the Test Site. The Test Site encompasses an area of approximately 1,350 square miles in a remote area of the Nevada desert.

Indeed, because of the potential dangers arising out of the activities conducted at the Test Site, the government chose the location precisely because of its remoteness from populated areas. Moreover, access to the site is severely restricted. Only authorized persons may enter the Test Site, and then only through guard stations located at the perimeter of the site. The primary entrance is located at Camp Mercury.

Reynolds Electrical and Engineering Company, Inc. (REECO) is the prime contractor at the Test Site. REECO is responsible for the maintenance and operation of facilities at both the Camp Mercury and forward work areas of the Test Site. These responsibilities include, but are not limited to, providing food and housing, and supervision of industrial safety. *REECO* operates under a "cost plus" contract with the Energy Research and Development Administration (ERDA), which has jurisdiction over the Test Site. In order to fulfill the requirements of this contract, REECO enters into bargaining agreements with a variety of unions for employment of their members. Other private contractors operating at the Test Site during the years in question include Edgerton, Germeshausen and Grier, Inc. (EG&G), of which REECO is a subsidiary, Bendix Product Engineering Corp., and Wackenhut Services, Inc. During this time, approximately 100 federal employees other than military personnel, and 4,000 private contractor employees worked at the Test Site.

---

* Honorable Alfonso J. Zirpoli, United States District Judge, Northern District of California, sitting by designation.

1. In some cases, the taxpayers were spouses who filed a joint return, although only one of them worked at the Test Site. For ease of reference, we simply use the term "taxpayers" to refer to those individuals who worked at the Test Site during the times relevant here.

During each of the taxable years in question, all federal employees permanently assigned to the Test Site and all employees of private contractors who worked at the Test Site, received, in addition to their regular wages, a per diem allowance for each day they reported for work at the Test Site. The amount of the allowance varied. Employees reporting to Camp Mercury received $5 per day; those reporting to any forward area received $7.50 per day. Employees received these allowances without regard to the actual costs incurred by them for transportation, meals, or lodging. Employees who were members of certain craft unions received an additional travel allowance which varied in amount depending upon the location of a particular employee's work station.

Both the district court and the Tax Court determined that the allowances were not excludable from income, and that the expenses incurred by the taxpayers in traveling between their residences and their work stations, and in purchasing meals and temporary lodging at the Test Site were not deductible in any amount whether or not the taxpayers worked overtime or slept at the Test Site overnight when they incurred these expenses. Both courts also concluded that the Commissioner had not discriminated against the taxpayers.

■ In view of the Supreme Court's decision in *Commissioner v. Kowalski,* 434 U.S. 77, 98 S.Ct. 315, 54 L.Ed.2d 252 (1977), rendered subsequent to the ruling in *Coombs,* the taxpayers have properly abandoned any claim to an exclusion from income of the allowances received from their employers. Thus, they bring before us only their claims for deductions of what they allege are travel expenses, including expenses for transportation, meals and lodging, and their allegation that the Commissioner has subjected them to discrimination. We first consider the taxpayers' various arguments regarding the deductibility of their expenses.

## II

Both the *Coombs* and *Cox* taxpayers seek deductions for expenses incurred for meals and lodging when working overtime or sleeping at the Test Site overnight. The *Cox* taxpayers also argue that they are entitled to transportation expenses when they stay overnight at the Test Site. Both sets of taxpayers purport to ground these deductions on the provisions of I.R.C. § 162(a)(2). That section provides:

(a) In general.

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

. . .;

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; . . .

The *Cox* taxpayers, pursuant to the general provisions of I.R.C. § 162(a), also attempt to justify the deduction of their meals and lodgings as "ordinary and necessary" business expenses when they work overtime.

## A.

■ We start from the premise, recognized by the taxpayers in both *Cox* and *Coombs,* that the transportation expenses ordinarily incurred by them, at least between their personal residences, most of which are in Las Vegas, and the entrance to the Test Site at Camp Mercury, are commuting expenses which are not deductible. *Sanders v. Commissioner,* 439 F.2d 296, 299 (9th Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 55, 30 L.Ed.2d 108 (1971). *See generally Commissioner v. Flowers,* 326 U.S. 465, 473, 66 S.Ct. 250, 90 L.Ed. 203 (1946); *Smith v. Warren,* 388 F.2d 671, 672 (9th Cir. 1968) (per curiam). Moreover, although taxpayers may find it necessary to eat meals away from their personal residences because of the exigencies of their businesses, this circumstance, alone, will not ordinarily provide a basis for the deduction of the cost of these meals. *See, e. g., United States v. Correll,* 389 U.S. 299, 302 n.7, 88 S.Ct. 445,

19 L.Ed.2d 537 (1967); *Commissioner v. Bagley*, 374 F.2d 204, 206 (1st Cir. 1967); *Drill v. Commissioner*, 8 T.C. 902, 903–04 (1947). Finally, as a corollary to this last point, and contrary to the contention of both the *Cox* and *Coombs* taxpayers, the mere requirement by an employer that an employee work overtime will not justify the deduction by the employee of the expense of a meal eaten at his place of work after completion of his regular shift. *See Commissioner v. Bagley, supra,* 374 F.2d at 206 (dicta); *Courtney v. Commissioner*, 32 T.C. 334, 344–45 (1959); *Drill v. Commissioner, supra,* 8 T.C. at 904. As the First Circuit stated in *Bagley* "we [do not] suppose, if a commuter were required to work late at his place of business, that any court would distinguish between his lunch and his supper." 374 F.2d at 206.

### B.

With these principles in mind, we move on to consider the claims of the taxpayers here. We begin with the *Cox* taxpayers' attempt to justify their deduction of overtime-related expenses pursuant to the general provisions of section 162(a).

As stated above, an employer's requirement that an employee perform overtime work will not, alone, justify the deduction of personal expenses for items such as meals and lodging. In an attempt to avoid the impact of this rule, the *Cox* taxpayers rely upon *Sibla v. Commissioner*, 68 T.C. 422 (1977), *appeal docketed*, No. 78–1295 (9th Cir. Feb. 8, 1978), and *Cooper v. Commissioner*, 67 T.C. 870 (1977), *appeal docketed*, No. 77–3815 (9th Cir. Dec. 6, 1977). This reliance is misplaced. In *Sibla* and *Cooper*, the Tax Court concluded that firemen required by regulations to make payments into the firemen's mess and to eat in the mess when in the station house, could deduct the payments as a business expense. In *Sibla* the Tax Court emphasized that it based its decision in both cases "on the nature of the requirement for the payment," *Commissioner v. Sibla, supra,* 68 T.C. at 432.

Even assuming that *Sibla* and *Cooper* are affirmed by this court, they provide for deductions only in circumstances where the employer requires employees to pay for and receive meals from a particular source as a condition of employment. The *Cox* taxpayers have not alleged that they were required to purchase overtime meals or to rent lodging at the Test Site as a condition of employment. Requiring that overtime work itself be performed simply is not equivalent to requiring that meals and lodging be purchased from any particular source. Indeed, the taxpayers do not even suggest that employees who worked overtime always purchased extra meals at the Test Site, or always rented lodging and spent the night at the Test Site. The cost of meals and lodging cannot be deducted pursuant to the general provisions of section 162(a), as "ordinary and necessary business expenses" simply because the taxpayers have been required to work overtime. If these expenses are to be deductible at all, they must fit within the purview of section 162(a)(2), as travel expenses.

### C.

As the language of section 162(a)(2) makes clear, expenses are deductible pursuant to that section only when they are incurred "while away from home in the pursuit of a trade or business." In *Commissioner v. Flowers, supra,* the Supreme Court established three general criteria which taxpayers must satisfy in order to qualify for a travel expense deduction. These are:

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an

expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

326 U.S. at 470, 66 S.Ct. at 252. In *United States v. Correll, supra,* the Court further clarified the circumstances in which travel expenses could be deducted pursuant to section 162(a)(2). *Correll* upheld the Commissioner's "sleep or rest" rule, which excludes from the travel expense deduction all expenses incurred on trips requiring neither sleep nor rest, 389 U.S. at 302–03, 88 S.Ct. 445. Pursuant to this rule, it is clear that the mere requirement by an employer that an employee work overtime will not justify a deduction of the expense of an extra meal even if the expense is incurred while "traveling."

This brings us to the taxpayers' contention that on occasions when they slept overnight at the Test Site, they were indeed "traveling away from home," and were, therefore, entitled to deductions for various expenses pursuant to section 162(a)(2). The question is whether a taxpayer who sleeps overnight at the general locale of his employ due to the exigencies of his employer's business may be considered to be traveling away from home.

In order to determine whether a taxpayer is "away from home" we must first determine what his "tax home" is. The Commissioner argues that the tax home of a taxpayer is his principal place of business—in this case, the Test Site. The taxpayers argue that, at least in the circumstances of their cases, their tax homes are their individual residences, or in the alternative, their individual work stations at the Test Site, but not the entire Test Site. The Tax Court and district court both concluded that the tax home of the taxpayers was the Test Site. We disagree.

Recently, we stated that "where one's 'home' is for tax purposes is essentially a question of fact." *Frank v. United States,* 577 F.2d 93, 97 (9th Cir. 1978) (citing *Curtis v. Commissioner,* 449 F.2d 225, 227 (5th Cir. 1971)). While we observed in *Frank* that cases in this circuit appear to conflict on whether a taxpayer's home is his residence

or principal place of business, we found it unnecessary to resolve any such dispute because the residence and principal place of business of the taxpayer in that case coincided insofar as the expenses then at issue were concerned. *Id.* at 97 n.3. On review of the cases, we conclude that there is in fact no conflict, and that we have developed through the years the rule, stated by the Fifth Circuit in *Curtis v. Commissioner, supra,* 449 F.2d at 227, that, for purposes of section 162(a)(2), a regularly employed "taxpayer's 'home' is his abode at his principal place of business or employment." Therefore, the question of fact referred to in *Frank* and *Curtis* is: of all the taxpayer's "abodes," which is at his principal place of business or employment? If the taxpayer has only one abode, we are presented with no question of fact as to this issue.

Some time ago, while considering section 162(a)(2)'s almost identical predecessor, we stated that "home" did not mean " 'the taxpayer's place of business, employment or the post or station at which he is employed.' " *Wallace v. Commissioner,* 144 F.2d 407, 410 (9th Cir. 1944). Under the circumstances of that case, we concluded that home meant the taxpayer's place of abode and not her temporary locale of employment. *Id.* at 410–11. We made it clear that even if the taxpayer calls a locale her "home," it does not become her home for tax purposes if she resides there on a temporary basis only. *See id.* at 410. *See also Markey v. Commissioner,* 490 F.2d 1249, 1255 (6th Cir. 1974).

In *Wright v. Hartsell,* 305 F.2d 221 (9th Cir. 1962), we allowed the deduction of travel expenses for an individual in circumstances similar to those of the taxpayers here. We concluded that "a taxpayer's inability to live near his job site is a valid ground for deduction as travel expense of the resulting cost of his transportation, food and lodging." *Id.* at 225 (footnote omitted). While the Supreme Court's *Correll* decision and our decision in *Sanders v. Commissioner, supra,* clearly change the law in this regard, neither case modified our implicit reaffirmation that a taxpayer's "home" is his abode.

Neither *Wallace* nor *Wright,* however, concerned a taxpayer who claimed that his home was in one city, but who had a permanent job or one of indefinite length which caused him to spend nights in another. We were thus not forced to choose one of two or more possible homes as the tax home for purposes of section 162(a)(2).

We squarely faced this question in *Wills v. Commissioner,* 411 F.2d 537 (9th Cir. 1969). In that case, a professional baseball player, who was employed by the Los Angeles Dodgers, but who kept his family residence near Spokane, Washington, attempted to deduct expenses incurred in the vicinity of Los Angeles for travel, meals and lodging. *Id.* at 539. We held that the expenses were not deductible since his tax home was Los Angeles, the location of his principal place of business. *Id.* at 540. Indeed we observed that while Wills did earn a small portion of his income in Spokane, in 1962 and 1963 he had spent only 138 and 96 days there, respectively. *Id.* at 539. Although we did speak of cases holding that a taxpayer's "principal place of business" is his "tax home," *id.* at 540, it is clear that we did not mean the address of his employer or business. Thus, we stated that "Wills' tax home was Los Angeles," *id.,* not that his home was the Dodger ballpark. This is wholly consistent with our decision in *Wright v. Hartsell, supra,* where, although in a different situation, we stated that a taxpayer may be expected to mitigate his expenses by living as near to his job site as is reasonably possible. 305 F.2d at 225.

Thus, when a regularly employed taxpayer maintains his personal residence or abode within the general area of his employment or as close thereto as is reasonably possible, we conclude that his "tax home" is that personal residence or abode. *Cf. Barnhill v. Commissioner,* 148 F.2d 913, 917 (4th Cir. 1945) (although "the statute implies that the home and the place of business must be in the same general locality," this is not the same as "construing the word 'home' as synonymous with the term 'place of business'"). *Commissioner v. Stidger,* 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967), and *Smith v. Warren, supra,* 388 F.2d 671, upon which the Commissioner and United States rely, are not to the contrary. *Stidger* only held that, insofar as military personnel are concerned, their permanent duty stations are also their homes for the purpose of determining the deductibility of travel expenses. 386 U.S. at 296, 87 S.Ct. 1065. The Court explicitly refrained from adopting any rule applicable to taxpayers generally. *Id.* at 292, 87 S.Ct. 1065.

In *Smith v. Warren, supra,* we considered the deductibility of transportation expenses pursuant to the general provision of section 162(a). 388 F.2d at 672. We thus were not concerned with the location of the taxpayer's "tax home" for purposes of the section 162(a)(2) travel expense deduction. While we did consider the location of the taxpayer's principal place of business, we did so only in conjunction with application of the rule that expenses incurred commuting between one's personal residence and principal place of business are personal, non-deductible expenses. 388 F.2d at 672–73. Similarly, in *Sanders v. Commissioner, supra,* our only direct consideration of the travel expense deduction of section 162(a)(2) led to the conclusion that the *Correll* "sleep or rest" rule precluded any deduction because the expenses at issue were incurred only on daily trips. 439 F.2d at 298.

We have, therefore, never held that the actual location of a taxpayer's business or employment is his "tax home." At most, we have only developed the rule that, in general, as between various possible "abodes," the abode or at least the locale of the abode which is located in the vicinity of the taxpayer's principal place of business or employment, or as close thereto as possible, will be considered the taxpayer's tax home for purposes of the travel expense deduction of section 162(a)(2).[2] In addition, when

**2.** When the taxpayer both earns a substantial portion of his income and resides in each of two or more locales, the determination of the taxpayer's home is especially difficult. *See Folkman v. United States,* 433 F.Supp. 1022, 1026–29 (D.Nev.1977), *appeals docketed,* Nos.

a taxpayer accepts employment either permanently or for an indefinite time away from the place of his usual abode, the taxpayer's tax home will shift to the new location—the vicinity of the taxpayer's new principal place of business. *Markey v. Commissioner, supra,* 490 F.2d at 1253. In such circumstances, the decision to retain a former residence is a personal choice, and the expenses of traveling to and from that residence are non-deductible personal expenses. I.R.C. § 262.

### D.

We now discuss the specific circumstances of those taxpayers before us. We conclude that, because they found that Las Vegas is the closest habitable community to the Test Site, the district court and the Tax Court were both clearly erroneous in finding that the taxpayers' tax homes are not their personal residences. Of course, pursuant to *Sanders v. Commissioner, supra,* transportation expenses incurred in daily travel between those residences and the Test Site are not deductible.[3] Whether the taxpayers are "away from home" within the meaning of section 162(a)(2) when they sleep overnight at the Test Site is, however, another matter.

We conclude that the unique circumstances of this case do fall within the scope of section 162(a)(2). As the Supreme Court observed in *United States v. Correll,*

*supra,* "[o]rdinarily, . . . only the taxpayer who finds it necessary to stop for sleep or rest incurs significantly higher living expenses as a direct result of his business travel . . . ." 389 U.S. at 304–05, 88 S.Ct. at 448. We believe that when, due to the combination of the unavoidable distance between their homes and places of work, and the employer's requirement of the performance of overtime work, the taxpayers "find it necessary" to sleep overnight at the Test Site, they are entitled to deduct the cost of any extra meals and lodging thus incurred. This approach raises a question of fact as to whether a particular stay overnight is "necessary." When the circumstances are such that the trial court does find that the stay is necessary, we conclude that the taxpayers are indeed "away from home in the pursuit of . . business" pursuant to I.R.C. § 162(a)(2).

We do not believe, however, that the stay overnight miraculously transforms the costs of commuting which the taxpayer has already incurred on the most recent trip to the Test Site or those which he will incur later, on the next trip home, into deductible travel expenses, within the meaning of section 162(a)(2). Indeed, the taxpayers are actually spared a round-trip commute when they are forced to sleep overnight at the Test Site. Similarly, we do not think that lunch on the day following the stay over-

77–3531, 77–3532 (9th Cir. Nov. 1, 1977), and *Markey v. Commissioner,* 490 F.2d 1249 (6th Cir. 1974). *Cf. Frank v. United States,* 577 F.2d 93, 97 (9th Cir. 1978) (trial court was not clearly erroneous in determining that taxpayer's home was in Oregon, where he maintained his personal residence and an office, and where he earned approximately 98% of his income, although he traveled extensively and apparently spent a significant amount of time in Washington, D.C., as a member of the United States Senate staff).

3. Narcena Taylor, one of the *Coombs* taxpayers, argues that the Tax Court erroneously refused to permit her deductions, pursuant to the temporary work assignment doctrine of section 162(a)(2). *See Harvey v. Commissioner,* 283 F.2d 491, 495 (9th Cir. 1960). Specifically, she sought to deduct transportation expenses incurred in commuting between her residence in the small community of Indian Springs and a

temporary work assignment away from the Test Site, in Las Vegas.

The Tax Court did not err. The temporary assignment rule was not designed as a means of overcoming the usual prerequisites of section 162(a)(2), such as the sleep or rest rule. Rather, the rule recognizes that "[t]he taxpayer who is away from home for short periods of time has the burden both of maintaining his home abode and of meeting the living expenses of his place of employment." *Harvey v. Commissioner, supra,* 283 F.2d at 495. Here, as the Tax Court recognized, the only burden which Taylor may have suffered was an increase in her commuting costs as a result of the change in her daily reporting station. Commuting costs such as these simply are not deductible. Taylor was not subjected to duplicate expenses and her circumstances do not fall within the temporary assignment rule.

night is transformed into a travel expense. This, too, is an expense which the taxpayers ordinarily incur at their place of work, and for which they are not generally permitted a deduction.

▆ We realize, of course, that a taxpayer who travels and stays overnight away from the locale of his home and employer ordinarily may deduct the cost of all meals and transportation incurred during his travels. As the Supreme Court stated in *United States v. Correll, supra,* however, "[a]ny rule in this area must make some rather arbitrary distinctions." 389 U.S. at 303, 88 S.Ct. at 448. The circumstances before us are, in any event, unique.

We have determined that the taxpayers may, in certain specified circumstances, be considered to be "away from home" even though they are at their normal place of employ. We do not believe, however, that we can totally ignore the plain fact that they are at their normal place of employment. We believe that our resolution of the question fairly balances the competing concerns of equity between the taxpayers here and the average daily commuter, and the policy of section 162(a)(2) to take account of the extraordinary, often duplicative costs, especially for lodging, incurred while traveling away from home, *see United States v. Correll, supra,* 389 U.S. at 303–05 & n.18, 88 S.Ct. 445; *Brandl v. Commissioner,* 513 F.2d 697, 699 (6th Cir. 1975); *Rosenspan v. United States,* 438 F.2d 905, 912 (2d Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971); *Commissioner v. Bagley, supra,* 374 F.2d at 206; *James v. United States,* 308 F.2d 204, 206–07 (9th Cir. 1962).

### E.

Pursuant to this analysis, we would ordinarily remand the cases of all of the taxpayers before us for further proceedings consistent with this opinion. The district court in *Cox,* however, determined that the taxpayers before it had failed to substantiate their expenses for meals and lodging, as required by I.R.C. § 274(d). The taxpayers argue in response that the district court erred in not exempting the taxpayers from the requirements of section 274(d) pursuant to Rev.Rul. 71–412, 1971–2 C.B. 170, implementing Treas.Regs. § 1.274–5(f). We do not agree.

▆ Rev.Rul. 71–412 quite clearly states that expenses will be considered substantiated on account of per diem allowances paid by an employer only when "the employer reasonably limits payment of such travel expenses to those which are ordinary and necessary in the conduct of his trade or business." 1971–2 C.B. at 170. The employers paid the per diem allowances in question to the taxpayers regardless whether they ever worked overtime, stayed overnight at the Test Site, or purchased meals on occasions when they did stay overnight or work overtime. Because the allowances are paid to employees whether or not they are forced to expend funds for meals or lodging in pursuit of the employer's business, the requirements of Rev.Rul. 71–412 and thus Treas.Regs. § 1.274–5(f) are not met. We therefore affirm the district court's denial of deductions for travel expenses in the *Cox* cases. We remand the *Coombs* cases to the Tax Court for further proceedings, consistent with our analysis, regarding the deduction of travel expenses.

### III

The taxpayers in both *Cox* and *Coombs* who are members of craft unions and who are not able to avail themselves of bus service on the Test Site, suggest that they are entitled to deductions for so much of their transportation expenses as are incurred each day traveling between the Camp Mercury reporting station at the entrance to the Test Site and their work stations. We disagree.

▆ The taxpayers correctly observe that employees who must travel from one work post to another are generally entitled to deductions for expenses incurred in such travel. *See, e. g., Steinhort v. Commissioner,* 335 F.2d 496, 504 (5th Cir. 1964). *See also Smith v. Warren, supra,* 388 F.2d at 672–73; *Stewart v. Commissioner,* 35

T.C.M. (CCH) 1762, 1764–65 (1976). The taxpayers argue that, pursuant to this general rule, they are entitled to a deduction for costs they incurred transporting themselves from Camp Mercury to their individual work posts. In support of their position, the taxpayers point out that, while prior to 1966 the government provided transportation from Camp Mercury to the forward work areas, circumstances later forced the craft workers to provide their own transportation; their employers in turn provided them with an extra $2.50 "subsistence" allowance and a variable travel allowance. Moreover, the taxpayers observe that collective bargaining agreements often state that these payments represented reimbursement for traveling expenses incurred in furtherance of the employer's interests.[4] The taxpayers conclude that these circumstances demonstrate that on-site travel, even though representing simply a portion of the trip between the taxpayers' homes and their work stations, should be deductible pursuant to the general provisions of section 162(a). The district court and the tax court apparently concluded that Camp Mercury was an arbitrary middle point of the taxpayers' commute to work, and that on-site transportation expenses were therefore non-deductible commuting expenses.

■ The taxpayers' reliance upon *Stewart v. Commissioner, supra,* is misplaced. In *Stewart* the taxpayer and Commissioner agreed that the taxpayer's transportation expenses, which he incurred driving his automobile "from his office to and from a number of other building sites on Hill Air Force Base on several occasions daily," were deductible. *Id.* at 1764. The only issue before us in this regard is whether Camp Mercury may be considered as the taxpayers' "office." We agree with both courts that the circumstances of the instant case are closer to those of *White v. Commissioner,* 31 T.C.M. (CCH) 273 (1972). The taxpayer in *White* had a substantial distance to

commute, fifteen miles of which was on-site between the main gate and his work station. As the Tax Court stated, "[a]lthough we sympathize with the petitioner's plight, we conclude that he is not entitled to the claimed deduction even to the limited extent represented by the cost of travel within the [White Sands Missile] Range." *Id.* at 275.

Since, on the record before us we are not "'left with the definite and firm conviction that a mistake has been committed,'" *Smith v. James Irvine Foundation,* 402 F.2d 772, 774 (9th Cir. 1968) (per curiam) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)), we cannot say that the findings of the district court or the Tax Court, to the effect that Camp Mercury is an arbitrary middle point, are clearly erroneous. *See* Fed.R.Civ.P. 52(a). To be sure, the employers at the Test Site recognized the added hardship of commuting to the forward work areas. But this does not mean that the taxpayers reported to the forward work areas "for the convenience" of their employers, any more than any employee who reports to his place of work does so for the convenience of his employer.

## IV

■ The taxpayers' final contention, rejected by both the district court and the Tax Court, is that the Commissioner discriminated against them, and in favor of employees of the National Oceanic and Atmospheric Administration (NOAA). The sole basis for their claim is a private "letter ruling" which the Commissioner's Baltimore District Director issued to NOAA. The ruling simply set forth the rules for withholding taxes on per diem allowances and including such allowances in income. The courts did not err in rejecting the claims of discrimination; they are without merit.

## V

Thus, we conclude that the expenses incurred by the taxpayers in transporting

---

4. Some of the *Cox* taxpayers allege that they were required to report daily to Camp Mercury for assignment to forward work stations. The district court found, however, that transporta-

tion was provided to the forward work areas under those circumstances. The taxpayers have not suggested that this finding is clearly erroneous. *See* Fed.R.Civ.P. 52(a).

themselves from their homes to their work stations at the Test Site are not deductible in any part. Nor are the costs of meals purchased due to overtime assignments generally deductible. When, however, the taxpayers, forced to live great distances from their places of work, are required to work overtime, and they therefore "find it necessary" to sleep overnight at the Test Site, the taxpayers may deduct the costs of lodging and extra meals thus incurred pursuant to section 162(a)(2). In the *Coombs* cases, this requires a reversal and remand in part for further proceedings; the *Cox* cases are affirmed, however, on the basis that the taxpayers in those cases failed to substantiate their expenses properly. Finally, the district court and the Tax Court did not err in finding that the Commissioner did not discriminate against the taxpayers.

JUDGMENTS APPEALED FROM IN NO. 78–2036 ARE AFFIRMED; JUDGMENTS APPEALED FROM IN NO. 77–2026 ARE AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.