JOHN P. KENNEDY V and SANDRA K. KENNEDY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kennedy v. Commissioner
Docket No. 9346-78.
United States Tax Court
T.C. Memo 1980-310; 1980 Tax Ct. Memo LEXIS 276; 40 T.C.M. (CCH) 958; T.C.M. (RIA) 80310; August 12, 1980, Filed John P. Kennedy V. pro se. Jerome Borison, for the respondent. TANNENWALD
MEMORANDUM FINDING OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioners' income tax for 1975 in the amount of $5,320. Concessions having been made by the parties, the issues for decision are: (1) whether petitioners are entitled to deductions for meals and lodging as ordinary and necessary expenses paid or incurred while away from home in pursuit of a trade or business pursuant to section 162(a)(2); [1]
(2) whether transportation expenses between Arnold, California, and San Francisco, California, are commuting expenses or deductible travel expenses; (3) whether petitioners are entitled to deduct premiums paid for disability insurance; and (4) whether petitioners may deduct or capitalize travel expenses for which petitioner John P. Kennedy V did not seek reimbursement from a closely held corporation. *278 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and stipulated exhibits are incorporated herein by this reference. John P. Kennedy V (hereinafter petitioner) and Sandra K. Kennedy were legal residents of Arnold, California, at the time they filed the petition herein. They filed a joint income tax return for the taxable year 1975 using the cash method of accounting with the Internal Revenue Service Center in Fresno, California. During the calendar year 1975, petitioner earned gross wages of $45,661.45 as a pilot for American Airlines (American). He has been employed by American since 1964. In 1970, the petitioners, along with their two children, moved to Arnold, California, which is located approximately 165 miles [2] east of South San Francisco. In 1974, the petitioners purchased a boat and berthed it in San Rafael, approximately 30 miles north of South San Francisco. South San Francisco is where San Francisco International Airport is located. When flying for American, the petitioner originated his flying trips from the San Francisco airport. *279 From 1970, when petitioner was upgraded to captain from co-pilot, through at least 1975, he was primarily on reserve status due to his low seniority. While on reserve status, petitioner was required to be available to substitute for another crew member who might be ill, called in for training, delayed by the weather, etc. Each month, petitioner was required to be available for approximately 20 scheduled days. Although American generally tried to assign trips to reserve crew members up to 30 hours in advance to allow for sleeping habits, it was sometimes necessary to give much shorter notice. Accordingly, American had a policy that pilots on reserve status were required to be "reasonably available" by surface transportation to the San Francisco airport; reasonably available, in practice, meant within a three-hour radius using surface transportation. If a crew member with a permanent out-of-town residence was on reserve status, he was expected to maintain a temporary residence within that radius of the airport. Petitioner used his boat to satisfy this requirement. After moving to Arnold in 1970 and prior to his acquisition of the boat in 1974, petitioner stayed with friends *280 or lived in motels in the San Francisco area to comply with American's requirements. Occasionally, on his last day of reserve status before a break, petitioner would return to Arnold if a pilot with lower seniority would be available. Petitioner paid $46.42 for meals away from home while on trips in connection with his employment by American. In 1975, petitioner expended $1,004 on premiums for disability income insurance policies made available to airline pilots. The policies insured him against loss of income resulting from accidental bodily injury or sickness resulting in a total disability. If such total disability occurred, the insurers would pay the monthly indemnity specified in the policies until the end of the disability, the attainment of age sixty, his death, or the end of the maximum indemnity period as specified in the policies. [3]
*281 In May 1975, petitioner was approached to enter a new business in the Arnold, California, area. On or about July 5, 1975, Ebbetts Pass Lumber Company (Ebbetts) was incorporated and began doing business on or about August 26, 1975. It continued the pre-existing business of a lumber company which had been operated as a sole proprietorship by another individual. Since its beginning, petitioner has owned 2,500 shares, representing one-third of Ebbetts' stock, and had also served as an officer and director of the corporation. During 1975, he was not an active employee of Ebbetts, but he received $625 compensation from it. Two other individuals also owned 2,500 shares each and served as officers and directors; one of them managed the business in 1975. The corporation did not make the election available to a small business corporation pursuant to section 1372(a). From August through December 1975, petitioner made 21 round trips between San Rafael and Arnold. In September 1975, petitioner and his wife and children took a three-and-a-half-week trip through northern California, Oregon, Washington, and Canada. They made several stops along the way so that petitioner could call *282 upon present and potential suppliers of Ebbetts. They visited friends while in Canada for five days. The petitioner was not reimbursed for any of these expenses by Ebbetts. He did not request reimbursement from Ebbetts because there was an agreement between the other two shareholders and himself that he would bear this expense and deduct it himself. In years subsequent to 1975, petitioner took a more active role in the business of Ebbetts, working as a part-time employee. ULTIMATE FINDINGS OF FACT Petitioner's primary place of business and his tax home were in the San Francisco area. OPINION Personal living expenses are usually nondeductible. Section 262. Section 162(a)(2), however, allows a taxpayer to deduct certain living expenses if they are traveling expenses paid or incurred "while away from home in the pursuit of a trade or business." In Commissioner v. Flowers, 326 U.S. 465, 470 (1946), the Supreme Court set forth the statutory requirements for a traveling expense deduction: (1) the expense is a reasonable and necessary traveling expense; (2) the expense is incurred "while away from home," and (3) the expense is an ordinary and necessary *283 expense incurred in pursuit of a trade or business. The deductibility of petitioner's lodging and meals while on his boat depends on whether these expenditures were incurred while away from home. The resolution of this issue depends on the location of his tax home. This Court has long held that "home", as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. Mitchell v. Commissioner, 74 T.C.     (June 16, 1980) (slip op. at 6.). [4] The purpose of the away from home deduction is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses". See Kroll v. Commissioner. 49 T.C. 557, 561-562 (1968). Where one's home is for tax purposes is a question of fact. Coombs v. Commissioner, 608 F.2d 1269, 1274 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976). *284 In the instant case, petitioner concedes that he maintained his residence in Arnold out of personal choice, but argues that he is entitled to deduct the cost of his boat and meals because his principal place of business, as of August 1975, was in Arnold. We reject this contention. It is clear from the record that petitioner was required to spend more time each month in the San Francisco area than in Arnold, and derived the greater amount, by far, of his income from the former than he did from the latter. [5] Though he was idle much of the time he was on reserve status in San Rafael, he was required to be available to American on short notice and this, in turn, required him to live within a short radius of the San Francisco airport. Although petitioner explained that, in later years, he would conduct some of his work for Ebbetts while waiting in reserve on his boat, he did not claim to be doing so in 1975. In any case, the work he described could have been done anywhere. We, therefore, find that petitioner's primary place of business and his tax home were in the San Francisco area. *285 Assuming arguendo that petitioner had been able to demonstrate that Arnold was his tax home, and that his living expenses while in San Rafael met the requirements of section 162(a)(2), he has not complied with the stringent substantiation requirements of section 274. Respondent has been more than generous in allowing petitioner $924 for expenses while in San Rafael. Petitioner has deducted $2,367 for travel between Arnold and San Rafael. By stipulation of the parties, only $1,280 has been substantiated, all of which is in issue. In light of our finding that petitioner's tax home was in the San Francisco area, his transportation expenses between Arnold and San Rafael are nondeductible commuting costs. Section 1.262-1(b)(5), Income Tax Regs.; Wills v. Commissioner, 411 F.2d 537, 539 (9th Cir. 1969) affg. 48 T.C. 308, 313 (1967), discussed in Coombs v. Commissioner, 608 F.2d at 1269. Any argument by petitioner that his transportation expenses between San Rafael and Arnold are a deductible expense because he was traveling between two jobs (see, e.g., Puckett v. Commissioner, 56 T.C. 1092, 1097-1098 (1971)) must *286 also be rejected. He has failed to meet the third requirement of Commissioner v. Flowers, supra, i.e., that the travel expenses must be incurred in the pursuit of business. His family residence was in Arnold, and we believe that his trips to the family home were for primarily, if not purely, personal reasons. Cf. Mazzotta v. Commissioner, 57 T.C. 427 (1971), affd. per curiam 465 F.2d 1399 (2d Cir. 1972). [6] Petitioner has not met his burden of proof of showing otherwise. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
We turn now to the disability insurance premiums which petitioner claims as an employee business expense or, in the alternative, as a medical expense. Premiums for disability insurance are not deductible as a business expense. Blaess v. Commissioner, 28 T.C. 710 (1957). [7] As far as a medical expense deduction is concerned, the insurance contracts involved herein did not separately state a charge for medical coverage, and contained waiver of premium *287 provisions so that the premiums paid do not meet the requirements of section 213(e)(2) and the regulations thereunder (section 1.213-1(e)(4), Income Tax Regs.). [8]
Another issue presented is whether petitioner is entitled to a deduction for the trip to northern California, Oregon, and Washington. Respondent disallowed the deduction because he found it to be a personal and nondeductible family vacation, because the petitioner did not satisfy the substantiation requirements of section 274, and because it would have been an expense of the corporation from which he should have sought reimbursement. We agree with respondent that petitioner is not entitled to deduct the expenses of the trip because he has failed adequately to substantiate his expenses as is required by section 274(d). Section 274(d)(1) provides that no deduction shall be allowed pursuant to the provisions of section 162 for traveling expenses, including meals *288 and lodging, unless the taxpayer substantiates "by adequate records or by sufficient evidence corroborating his own statement" the specific time, place, and amount of the claimed expenditures, as well as the business purpose of the expense. As the regulations explain, "adequate records" consist of account books, diaries or similar statements "made at or near the time of the expenditure," and documentary evidence (such as bills or receipts) which together establish each of the prescribed elements. Section 1.274-5(c)(2), Income Tax Regs. We upheld the validity of these regulations in Sanford v. Commissioner, 50 T.C. 823 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). See also Paal v. Commissioner, 450 F.2d 1108, 1109 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. At trial, petitioner presented the Court with a packet of receipts he claimed were from this trip. The vast majority of the receipts were either for his expenses while in Canada, recreational expenses, or for expenses incurred other than on this trip. He provided no corroborating evidence for these expenditures, [9] nor did he attempt to apportion the additional *289 costs attributable to his family; although he asserted at trial that he was only claiming his share of the expenses, many of the receipts indicate that amounts were expended for the entire family. Insofar as can be determined from the record, petitioner merely estimated these expenses. His reliance on cases [10] supporting these estimates is misplaced, because those cases involved years prior to the addition of section 274 to the Code in 1962. [11]
Petitioner's presentation of a few charge receipts for hotel and meal expenses, without substantiating each item in a manner which satisfies all of the requirements of section 274 and the regulations thereunder, is insufficient to overcome respondent's disallowance. BJR Corp. v. Commissioner, 67 T.C. 111. 128 (1976). As we explained to petitioner at trial, we no longer have the latitude under the statute to estimate his *290 expenses. Sanford v. Commissioner, 50 T.C. at 828. Having disposed of the claimed deduction on the basis of section 274(d), we need not consider whether the trip was personal in nature or whether, based on the understanding between Ebbetts' shareholders, the expenses properly belonged to the corporation or, alternatively, should be construed to be an additional contribution to capital by petitioner. One other deduction claimed by petitioner remains in issue -- a $160 expense allegedly incurred for meals and mileage while training. No evidence was presented on this issue, so we disallow the deduction because the petitioners have failed to carry their burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.
To reflect the concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect in 1975.↩
2. The Stipulation of Facts states 150 miles, but petitioner testified it was 165 miles to San Francisco International Airport from his house, and respondent accepted this figure when the parties stipulated at trial as to the amount of the travel expense deduction, if it is allowed.↩
3. The policy obtained from Massachusetts Casualty Insurance Company provided that no indemnity for loss of time was payable during the first fourteen months of any period of disability due to accident or sickness. Petitioner also had a Pilot's Mutual Aid policy, which was a self-insuring agreement between American's pilots. It would make the disability payments during the 14-month elimination period of the first policy.↩
4. The Ninth Circuit, to which an appeal from this case would lie, recently clarified its position on this issue, stating, "[When] a regularly employed taxpayer maintains his personal residence or abode within the general area of his employment or as close thereto as is reasonably possible, * * * his 'tax home' is that personal residence or abode." Coombs v. Commissioner, 608 F.2d 1269, 1275 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976). See generally Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).
5. Petitioner argues that, because Ebbetts could have elected Subchapter S treatment, we should regard one-third of Ebbetts' income as if it were earned by him. Even were we to do so, he earned over eight times as much income from his employment with American in all of 1975, and we have no breakdown for his income from American for the last part of the year. In any case, since the corporation (and its shareholders) did not make the available election pursuant to section 1372(a), they cannot receive its benefits. Cf. Pestcoe v. Commissioner, 40 T.C. 195, 198↩ (1963). Petitioner's elaborate discussion of the history of Subchapter S is of no help since he and his fellow shareholders declined to elect its provisions. In connection with the foregoing, we expressly leave open the question whether if Ebbetts had elected Subchapter S status we would necessarily include petitioner's share of its income in making a monetary comparison.
6. See also Lackey v. Commissioner, T.C. Memo. 1977-213↩.
7. See also Andrews v. Commissioner, T.C. Memo. 1970-32↩. 8. See also Fausner v. Commissioner, T.C. Memo. 1971-277, affd. on another issue 472 F.2d 561 (5th Cir. 1973), affd. 413 U.S. 838↩ (1973).
9. Petitioner himself did not testify that he had any suppliers in Canada. ↩
10. E.g., Hofmann Bros. Realty Corp. v. Commissioner, T.C. Memo. 1963-320; K & H Realty Corp. v. Commissioner, T.C. Memo. 1956-107↩. 11. Section 4, Revenue Act of 1962, 76 Stat. 974.↩