JAMES S. LYMAN and GENEVA E. LYMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lyman v. Commissioner
Docket No. 19138-82.
United States Tax Court
T.C. Memo 1984-115; 1984 Tax Ct. Memo LEXIS 557; 47 T.C.M. (CCH) 1236; T.C.M. (RIA) 84115; March 8, 1984. James S. Lyman, pro se. Dean H. Wakayama, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION
*559 FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $2,890 in petitioners' Federal income tax for 1979. The following issues are presented for decision: 1. Whether earnings in 1979 in the amount of $287 on a share savings account at the Alaska Teamsters Federal Credit Union was interest income, fully taxable, or was dividend income subject to the limited section 116(a) [1] exclusion; 2. Whether petitioners are entitled to deduct employee business expenses consisting of (a) expenses for meals and lodging in the amount of $6,818 and (b) depreciation on a shotgun allegedly used in petitioner's trade or business; 3. Whether petitioners have shown that they are entitled to all, or any part, of a deduction of $1,111 as expenses incurred in the management of investment property; 4. Whether petitioners have shown that they made a charitable contribution of $1,000 in excess of the amount claimed on their income tax return; and 5. Whether petitioners are entitled to deductions in respect of mining equipment purchased and used in 1979. Because *560 the facts relating to the several issues are separable, we shall state the general facts and then combine our discussion of the facts and law relating to each issue. At the time their petition was filed, petitioners resided in the State of Alaska. During 1979, petitioner James S. Lyman (hereinafter petitioner) was employed by the State of Alaska Department of Transportation as a maintenance worker/leadman. Petitioner Geneva E. Lyman worked part of the year as a security guard for the State of Alaska. They filed a timely Federal income tax return for 1979. 1. Dividend Versus Interest Income
In 1979, petitioner received income in the amount of $287 from Alaska Teamsters Federal Credit Union 959 (credit union).That sum was received with respect to funds which petitioners had on deposit in a share savings account. Petitioners here argue that they are entitled to exclude $200 of the $287 under section 116. Section 116(a), in the form in which it was in effect in 1979, provides that gross income does not include amounts received as dividends from domestic corporations to the extent that the dividends do not exceed $100.Apparently on the theory that their credit union *561 account was jointly owned, petitioners contend that they are entitled to exclude $200 on their joint return. Section 116(c) provides, however, that: Any amount allowed as a deduction under section 591 (relating to deduction for dividends paid by mutual savings banks, etc.) shall not be treated as a dividend. Section 591 allows mutual savings banks and other savings institutions chartered under Federal law to take deductions for "amounts paid to, or credited to the accounts of, depositors * * * as dividends or interest on their deposits or withdrawable accounts * * *." Federal credit unions, such as the Alaska Teamsters Federal Credit Union, are organized, chartered, and managed pursuant to 12 U.S.C. secs. 1751-1795 (1982). A Federal credit union is a form of mutual savings bank. The $287 that petitioners received from the credit union is not, therefore, a dividend within the meaning of section 116(c). Under the law as it stood in 1979, petitioners are not entitled to exclude from gross income any part of the $287. On their 1979 return, petitioners reported interest income in the amount of $120. This $120 was interest from their credit union account. *562 Accordingly, petitioners' income is increased by $167 for the omission of that amount of credit union income. 2. Employee Business Expense Issues
A. Meals and Lodging
Petitioner began working for the State of Alaska Department of Transportation as a maintenance worker in September 1978. In March 1979, he was transferred from Fairbanks to a post of duty at Seven Mile Camp, about 170 miles north of Fairbanks. In order to provide living quarters for himself and his family at Seven Mile Camp, petitioner bought a mobile home, parked it on State-owned property, and connected it to State-owned facilities. Petitioner paid the State (or had deducted from his wages) $2,243 for the cost of parking and hooking up the mobile home. There were no other living quarters or mobile home hook-up facilities in the area. He moved his family to Seven Mile Camp in April 1979. On his income tax return, petitioner claimed an employee business expense as an adjustment to income in the amount of $6,818. The deduction was entered on line 2 of Form 2106, entitled "Meals and lodging." The State of Alaska paid petitioner a cost-of-living allowance computed with reference to the *563 amount of his wages. The record is not precisely clear but, as we understand petitioner's testimony, it amounted to $6,818, the same amount as the deduction claimed for "Meals and lodging." Petitioner was employed continuously at Seven Mile Camp from March 1979 to at least June 1983. He received notice by memorandum dated December 13, 1982, that consideration was being given to transferring him to Coldfoot Road Maintenance Facility, but he was still at Seven Mile Camp when the case was tried in June 1983. Because it was necessary for petitioner and his family to travel to Fairbanks from Seven Mile Camp, a round trip of about 350 miles, to do their banking, buy groceries, and handle other matters, petitioners maintained a trailer which was parked on a friend's lot in Fairbanks. They used the trailer as sleeping quarters when they visited Fairbanks.They bought a house in Fairbanks in October 1981. Petitioner seeks to justify the $6,818 employee expense deduction on three alternative grounds: (1) That Fairbanks was his "tax home" and he was traveling "away from home" while at Seven Mile Camp; (2) that denial of the exclusion of this cost of living allowance would be unconstitutional *564 discrimination because Federal Government employees are allowed such an exclusion; and (3) if Seven Mile Camp is his tax home, he is entitled to deduct the cost of traveling to Fairbanks and maintaining a home there. (1) Away-from-home argument. Section 162(a)(2) provides for the allowance of a deduction for ordinary and necessary expenses, including amounts expended for meals and lodging, "while away from home in the pursuit of a trade or business." Petitioner contends that Fairbanks was his tax home and that he is, therefore, entitled to a deduction for his living expenses while he was working at Seven Mile Camp. We do not agree. A taxpayer's home, for the purposes of section 162(a)(2), is generally the taxpayer's abode at or near his or her principal place of employment.Underlying this definition is the premise that a person will normally choose to make his home near his work; on the other hand, this may not be true when the taxpayer's employment is "temporary" and not of "indefinite or indeterminate duration." Coombs v. Commissioner,608 F.2d 1269, 1273-1276 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976). Temporary *565 employment for purposes of applying the above rule has been defined as the kind of employment that can be expected to last for only a short period of time. Norwood v. Commissioner,66 T.C. 467, 469 (1976). The present case is appealable to the Ninth Circuit, and that court has expressed a slightly different view. See Harvey v. Commissioner,283 F.2d 491, 495 (9th Cir. 1960), revg. 32 T.C. 1368 (1959), where the Court stated that employment is indefinite "if there is a reasonable probability known to him [the taxpayer] that he may be employed for a long period of time at his new station. What constitutes 'a long period of time' varies with circumstances surrounding each case." Subsequent opinions by the Ninth Circuit reveal that its approach to the exception of the general "tax home" rule does not differ materially from the view of this Court. See Coombs v. Commissioner,supra.
On the instant record it is unnecessary to decide what differences, if any, exist between the two approaches because we conclude that under either test as applied by this Court or that applied by the Court of Appeals for the Ninth *566 Circuit, that Seven Mile Camp was petitioner's tax home. His assignment at that location was not temporary; it was of indefinite or indeterminate duration. He began his work there in March 1979 and was still working there on the date of the trial on June 21, 1983. In 1979, the year before the Court, the prospect was that his assignment at that location would continue for an indefinite and substantially long period of time. The prospect has come true. Substantially all of his business activity was carried on there, and that location was the only place in which he earned wages. Because Seven Mile Camp was his tax home, petitioner was not traveling away from home while working there within the meaning of section 162(a)(2) and, therefore, is not entitled to the claimed deduction on that ground. [2]
(2) Exclusion of cost-of-living allowance. As noted above, petitioner's claimed deduction of $6,818 for "Meals and lodging" *567 is equal to the cost-of-living allowance paid him by the State of Alaska. Petitioner argues that this cost-of-living allowance is excludable from his gross income under section 912(2). [3] He recognizes that this provision, by its terms, applies only to employees of the United States Government, but he argues that it is discriminatory and unconstitutional to allow Federal employees the exclusion and to deny it to State employees. In Sjoroos v. Commissioner,81 T.C. 971 (1983), we rejected the argument that it was unconstitutional discrimination to allow Federal employees an exclusion and to deny a similar exclusion *568 to privately employed persons. We held that section 912(2) was constitutional because Congress had a rational basis for limiting the exclusion to Federal employees. The legislative history of section 912(2) shows that the exclusion of Federal employees' cost-of-living allowances from their taxable income was designed to offset rising taxes and living costs and was adopted in lieu of an increase in the amount of the allowance. Making this decision was within the power of Congress to determine the salaries of Federal employees and to decide how those salaries should be taxed. The exclusion thus does not involve unconstitutional discrimination, whether the individual is privately employed or State employed, and petitioner's constitutional argument is without merit. (3) Deductibility of travel expenses to Fairbanks. Petitioner argues that, even if Seven Mile Camp is his tax home, he is still entitled to deduct the costs of travel to Fairbanks and maintaining a home there.In support of this argument, petitioner emphasizes his family's isolation. He states that: * * * the routine business of life cannot be conducted this side of Fairbanks, i.e. mail, banks, telephones, doctors, *569 groceries, business associates, business opportunities, or business contacts, and all merchants which provide the normal life support items. The land here is all Federally owned and cannot be purchased by an Individual for residential purposes. In short there is nothing at 7 mile but 7 other state workers who maintain this section of the "Haul Road" to the Prudhoe Bay oil field. The cost of living this way is difficult for you that live in town to comprehend. Each item of need requires a 320 mile round trip to satisfy. The petitioners have accepted this assignment because it has been necessary for the collection of wages.It should be noted that the amount of the deduction claimed is far less than the actual costs of this situation.
We do not question that petitioner was required to incur substantial amounts of personal expenses as a direct result of his living in Seven Mile Camp, but there is no statutory provision allowing deductions for such expenses. As we understand the facts, the State of Alaska allowed him the $6,818 cost-of-living allowance to offset those expenses, but Congress has not authorized their deduction. Under the law, his living expenses are nondeductible *570 personal expenses under section 262. In his reply brief, petitioner discusses section 119, but that section is not applicable. Section 119 provides that an employee may exclude from income the value of any "lodging furnished to him * * * by * * * his employer for the convenience of the employer" but only if "the employee is required to accept such lodging on the business premises of his employer as a condition of his employment." Here, it is stipulated the State of Alaska did not provide any lodging for petitioner in 1979. It gave petitioner a cost-of-living allowance in cash and then charged him $2,243 through salary deductions for hook-up service for his mobile home. Section 119 refers to meals and lodging furnished in kind; it does not refer to cash allowances which partially or fully cover living costs. Commissioner v. Kowalski,434 U.S. 77, 84 (1977); Tougher v. Commissioner,441 F.2d 1148 (9th Cir. 1971), affg. per curiam 51 T.C. 737 (1969). B. Depreciation of Shotgun
Petitioner claimed and respondent denied a deduction of $33 taken on Form 2106 for depreciation on a shotgun. An accompanying statement explains *571 that the shotgun was carried "on the job by the taxpayer at all times for the purpose of protection against bears and other wild animals in the area of his employment." Petitioner also claimed depreciation of $56 on the shotgun as an itemized deduction on Schedule A. Respondent has conceded that petitioner is entitled to the Schedule A $56 depreciation deduction; the $33 depreciation deduction is apparently duplicative and may not also be allowed. 3. Investment Travel Issue
Although they lived in Alaska in 1979, petitioners owned three pieces of property in Utah. One was a rental property, a house located in Provo, that required considerable maintenance. During 1979, petitioners received $235 per month as rent for the house, a total of $2,820. [4] Another property was a farm located near the City of Fountain Green, about 40 or 50 miles from Provo. The third property was land located in Fountain Green. During 1979, Mrs. Lyman traveled to Utah and stayed approximately 28 days, from January *572 25 to about February 26, 1979. While there she attended the 50th wedding anniversary of her parents and visited with relatives. She also took care of a number of matters related to petitioners' property. She arranged for a carpenter to do repairs and other work on the rented house, including repair of the plumbing and the shower stall and work on the garage. Mrs. Lyman also made a search for, and found, certain tax records with respect to a property that petitioner had sold and on which Sanpete County, Utah, claimed that taxes had not been paid. In addition, Mrs. Lyman made an effort to sell a piece of farmland. To travel to petitioner's scattered properties, she rented an automobile. While on this trip, Mrs. Lyman was accompanied by petitioners' two small children, 5 and 6 years of age. Their airline tickets, bought in December 1978 in order to obtain the "super saver" rate, cost $700.77. While in Utah, or shortly before her departure from Alaska, Mrs. Lyman wrote the following checks to cover expenses: Date
Payee
Amount
1/22/79
Cash
$175.00
1/30/79
Hugh W. Edwards
150.00
2/15/79
Monticello Mercantile
16.46
2/20/79
Cash
50.00
2/21/79
Cash
50.00
2/24/79
ZCMI
39.78
2/25/79
Loyce Edwards
100.00
2/26/79
Albertsons
4.64
2/28/79
Edith G. Lyman
60.00
*573 Section 212(1) and (2) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income and for the management, conservation, or maintenance of property held for the production of income. Section 262 provides, however, that no deduction is allowable for "personal, living, or family expenses." Unfortunately for petitioners, the evidence is clear that the airline ticket used by Mrs. Lyman and her children was bought in December 1978. Because petitioners report their income and expenses on a cash basis and that expenditure was made prior to the beginning of 1979, the taxable year here in controversy, this part of the cost of the trip cannot be deducted in 1979. Sec. 1.461-1(a)(1), Income Tax Regs.
We are satisfied, however, that a substantial part of the other expenses Mrs. Lyman incurred was made in connection with the management and maintenance of petitioners' Utah property that was held for the production of income within the meaning of section 212(2) and is deductible.Petitioner estimated that 75 percent of those expenses were related to her property management work. Using our best judgment in *574 the light of the whole record, we estimate and find that such deductible expenses amount to $300. 4. Charitable Contribution Issue
On their 1979 income tax return, petitioners claimed a charitable contribution deduction in the amount of $3,709 (including contributions to the Church of Jesus Christ of Latter-Day Saints (LDS Church) in the amount of $3,416). In his brief, respondent concedes that petitioners are entitled to a deduction in that amount. The dispute here is with respect to an additional deduction of $1,000 claimed by petitioner as a contribution to the LDS Church. The record includes a copy of a credit union draft dated December 30, 1979, payable to the LDS Church which, petitioner argues, documents the contribution. Respondent emphasizes that petitioner did not introduce a cancelled check but only a nonnegotiable copy of the draft and appears to argue, alternatively, that the copy may actually represent a 1980 contribution. Petitioner explained that the draft was drawn on the Alaska Teamsters Federal Credit Union and that the credit union had taken over his account from the Alaska National Bank. Under the banking arrangement then in effect, credit union *575 members kept copies of drafts drawn on the account and did not receive the original draft after it had been negotiated. Petitioner explained further that this $1,000 check was written to bring him current to "what's called a full tithe payer position." Based on the record we conclude that petitioner is entitled to this additional $1,000 contribution. 5. Gold Mining Business Issue
Petitioner did not claim any deductions on his 1979 return for expenses incurred in an alleged gold mining business. Before the Court, however, he claims a deduction with respect to a gold mining dredge which he bought in 1979 for $1,365.21. The dredge was designed to suck up gold-bearing underwater gravel, which was then processed in a sluice box. Petitioner testified that, in his opinion, the equipment would be usable over a 7 to 10-year period. It is not clear from the record whether his claim is for a depreciation deduction under section 167 with respect to the equipment or its cost under section 162(a). In any event, we do not think petitioner was engaged in gold mining as a trade or business in 1979. He admitted that he had not filed or otherwise obtained any mining claims in that *576 year; he had talked with Bernard Wright who had offered him a claim for $20,000 in Canyon Creek, but petitioner did not make an acquisition. Petitioner used the equipment only during three separate weekends in 1979. He has sold no gold from his operations and kept no business records of the cost of his operations. Petitioner testified that, in years subsequent to 1979, he has bought a backhoe and has made "verbal arrangements" with respect to four mining claims. At some point, petitioner's mining activities may become a business but we do not think that they were a business in 1979. He testified to efforts to "coordinate" with his sons. At another point in his testimony, however, he was asked whether he was "still engaging in this mining operation" and he replied: "Still intend to." When and if he engages in the mining operations as a business, he may be entitled to deductions, but he has not shown that they were a business in 1979.[5]
6. Tax Protest
*577 Petitioner included at the end of his brief a series of frivolous tax protester arguments. We think petitioner, an obviously intelligent person, is fully aware that those arguments are without merit and should be rejected, and we do so without discussion. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. Respondent correctly points out that, except for $2,243 paid to the State of Alaska as rent, petitioner has not verified the amounts of his expenses. In any event, for the reasons stated in the text, petitioner does not qualify for the claimed deductions.↩
3. SEC. 912. EXEMPTION FOR CERTAIN ALLOWANCES. The following items shall not be included in gross income, and shall be exempt from taxation under this subtitle: (2) Cost-of-living allowances.--In the case of civilian officers or employees of the Government of the United States stationed outside the continental United States (other than Alaska), amounts (other than amounts received under title II of the Overseas Differentials and Allowances Act) received as cost-of-living allowances in accordance with regulations approved by the President.↩
4. On their income tax return for 1979, petitioners mistakenly reported their rental income from this property as $3,000 and are thus entitled to an income adjustment of $180.↩
5. The parties have stipulated that petitioners are entitled to the following deductions: ↩
Farm losses
$1,193
Additional farm losses
$ 140
Property taxes
$ 81
Tax preparation
$ 51
Tools
$ 878